MAURER ET AL., APPELLEES, *v.* AUSTIN SQUARE, INC., ET AL., APPELLANTS.

(No. 5688—Decided February 15, 1966.)

Messrs. *Slabaugh, Walker, Pflueger, Roderick & Myers, Mr.* *Howard C. Walker, Sr.,* and *Mr. Harold D. Parker,* for appellees.

Messrs. *Roetzel, Hunsicker & Michaels* and *Mr. Bernard J. Roetzel,* for appellants.

DUFFEY, J. This is an appeal on questions of law and fact from the issuance of a permanent injunction. The action was brought under Section 713.13, Revised Code, to prevent an allegedly threatened violation of the Building and Zoning Codes of the city of Barberton.

Appellees are property owners in the vicinity of a proposed "shopping center." Appellant Austin Square, Inc., is the owner of a 26-acre tract in Barberton. The property is zoned as a "Planned Local Business District" (PBL) pursuant to a comprehensive zoning code adopted in 1960 (ordinance No. 129-A-1960). Appellants intend to erect a one-story structure, with malls and a concourse, containing 4,850,730 cubic feet, 210,629 square feet, and costing approximately $2,250,000. It will house some 35 or more retail store units, the largest of which will be a "branch" of the M. O'Neil Company covering some 82,000 square feet. The parking capacity would have space for about 1,500 vehicles at one time.

The trial court found, and we agree, that the facility is designed and intended to provide business services to the entire city of Barberton and to people in areas surrounding the city up to a radius of five miles from the property.

The question of special damage was not pressed before this court, but is a preliminary requirement. We find that appellees will suffer special damages and are entitled to sue under Section 713.13, Revised Code.

Appellants have questioned the application of provisions for Local Business Districts (BL) under Section 1163.05 to Planned Local Business Districts (PBL) under Section 1163.20 of the City Code. In our opinion, the provisions of Section 1163.20 are cumulative and in addition to those in Section 1163.05.

The principal issue is the validity of a provision of Section 1163.05, subparagraph 1b, which, as pertinent here, provides:

"Sec. 1163.05   PERMITTED USES; LOCAL BUSINESS DISTRICT

"1. *Main Uses:*

"* * * *

"b. *Retail stores and services* conducted wholly within enclosed buildings and devoted to supplying *neighborhood needs* to the following limited extent: * * *." (Emphasis added.)

A detailed list of categories of permitted retail sales and

services is provided, together with limits on open air or "yard" rules. Subparagraph 2 provides:

"2. *Similar Main Uses.* Any other *retail neighborhood* store, shop, or services not listed above or in any subsequent use classification, and determined as similar by the Commission according to standards set forth in Sec. 1181.11. Main uses enumerated in the General Business District may be permitted in a Local Business District if a Conditional Use Permit is granted." (Emphasis added.)

As a comparison, Section 1163.06, provides in part:

"Sec. 1163.06  PERMITTED USES; GENERAL BUSINESS DISTRICT

"1. *Main Buildings and Uses:*

"a. All stores, services, dwellings and other uses permitted in Local Business Districts; and

"b. Additional retail business stores and services conducted wholly within enclosed buildings and devoted to supplying all community needs to the following extent: * * *."

Numerous categories are listed. They are substantially more extensive than those listed for the Local Business District.

Section 1163.01 is the "intent" statement for the Business District Chapter of the Code. The purposes of the local and general districts are stated as:

"* * *

"4. to provide Local Business Districts in close proximity and serving the ordinary shopping needs of the *immediate neighborhood*, and which do not attract large volumes of traffic; and

"5. to provide General Business Districts which require larger storage space, are open in evenings and generate large volumes of traffic, serving the extraordinary needs of the entire community; and * * *." (Emphasis added.)

Appellants contend that the provision of Section 1163.05 which limits a facility to supplying only "neighborhood needs" is too vague and indefinite and therefore invalid. In enacting its zoning code, the city of Barberton exercised a legislative power granted to it by Article XVIII of the Constitution of Ohio. The appellants' contention is, therefore, a claim that the limitation is unconstitutional on its face. In their brief, appellants argue that there is no definition of a neighborhood in the ordinance, that each succeeding planning commission

could define it for themselves, and that the size of a facility would be related to "the current neighborhood population."

A neighborhood is a concept rather than a thing. As with all concepts, it is necessarily relative. The meaning depends in large part upon the general context and the specific usage. Constitutional requirements do not demand impossible precision. It is only necessary that the legislative body provide a statement of its policy and set such guides as can be fairly understood. The elaboration by application to particular circumstances may be accomplished by administrative agencies and the courts. For example, who is an "owner" or what may be "fair competition" or "reasonable value" takes on meaning from the regulatory field involved and from the specific usage.

The pertinent definition of "neighborhood" found in Webster's New International Dictionary, Third Edition (1964), is: "* * * 4a: a number of people forming a loosely cohesive community within a larger unit (as a city, town) and living close or fairly close together in more or less familiar association with each other within a relatively small section or district of usually somewhat indefinite boundaries and usually having some common or fairly common identifying feature (as approximate equality of economic condition, similar social status, similar national origins or religion, similar interests) and usually some degree of self-sufficiency as a group (as through local schools, churches, libraries, business establishments, cultural and recreational facilities) b: the particular section or district that is lived in by these people and that is marked by individual features (as type of homes and public establishments) that together establish a distinctive appearance and atmosphere c: an area or region of usually vague limits that is usually marked by some fairly distinctive feature of the inhabitants or terrain * * *."

The Ohio Legislature has employed the neighborhood concept in establishing a standard for valuation under the special assessment statutes. See Section 727.02, Revised Code, and *Early v. Leatherman, Treas.* (1955), 100 Ohio App. 448, applying a requirement based upon "lots in the neighborhood." The "neighborhood" is also one of the basic concepts in legal doctrines pertaining to the enforcement or waiver of private restrictive covenants. See Restrictions—Change of Neighbor-

hood—4 A. L. R. 2d 1111, supplemented in 88 A. L. R. 405, and 54 A. L. R. 812; 15 Ohio Jurisprudence 2d 131, Covenants, Section 134.

In the context of zoning, a "neighborhood" necessarily refers to an area having common geographical, physical and social characteristics which affect its physical development or maintenance. In the context of Section 1163.05, it also necessarily means that the geographical area is in the vicinity of the business district in question.

In the large urban centers, the concept of a neighborhood, both as a social unit and as a geographical area, has undergone great changes. Burgeoning population and physical growth have obliterated some of the more obvious identifying characteristics which are still apparent in small community neighborhoods. However, for planning purposes, certain factors form the usual basis for establishing the approximate boundaries— and neighborhood boundaries are always only approximate. In imposing land-use controls, pertinent city planning factors to identify a neighborhood area are: physical characteristics or "barriers" such as railroads, streams, major traffic arteries; public facilities such as schools, parks and recreation centers; economic equivalence; traffic patterns; and cultural factors, not the least of which might well be the historical origin of the area.

While the regulatory purpose of land-use control and factors such as those just stated are the basis for defining a neighborhood, there is obviously room for reasonable differences as to the exact boundaries of any particular neighborhood. The purpose and effectiveness of the requirement of Section 1163.05 do not require identification of exact boundaries. Further, the determination of the neighborhood is in the first instance a matter for trained city planners and should be left to the appropriate agency and its staff. Compare *Grant* v. *Washington Twp.* (1963), 1 Ohio App. 2d 84, at 89.

If appellants wish a determination of the neighborhood in relation to this particular PBL District, it can be made by the Planning Commission in the review of Development Plans submitted under Section 1163.20, subparagraph 3, and Section 1181.06. Obviously, such a determination must be reasonable and would be subject to judicial review.

Appellants have pointed out that the ordinance does not

contain any limitations on the size of the structure or number of outlets in a PBL District. However, we fail to see how the city's use of the ''neighborhood'' concept rather than imposing specific controls has any bearing on the validity of the former. Limits on the size of structures, the total outlets, etc., would have the advantage of greater ease in application and perhaps are the more traditional controls found in zoning codes. They have not always been too successful. Perhaps this is what induced the Barberton consultant to choose a broader approach. Whether this newer approach is administratively sound and capable of effective enforcement is for the city council to decide. As a court, we only determine that it is sufficiently definite to be constitutional.

In determining whether an injunction should issue, it is not necessary in this case to know what the neighborhood is. If the area to be served is greater than anything that could reasonably be said to be the neighborhood for the proposed facilities, then a violation has been shown.

The southeast third of the city of Barberton is separated from the north and west portions of the city by a physical barrier consisting of the parallel lines of the Tuscarawas River, the Ohio Canal, the Pennsylvania Railroad, and the Akron and Barberton Belt Railroad. Appellants' property is almost in the middle of this southeast portion of the city. In the context of a regulation by the city of Barberton, it is difficult to conceive how the neighborhood of appellants' business district could extend northward or westward beyond the boundaries of this southeast portion. However, the evidence shows that the service area for which this development is designed includes the entire city of some 35,000 and all the people for several miles beyond the city in all directions. That might be a neighborhood in the context of the state of Ohio. It is not a neighborhood under any reasonable application of the Barberton ordinance.

In holding that the contemplated development would constitute a violation of the ordinance, we do not in any way suggest that such a shopping area should not be developed. Perhaps it should, and probably it ultimately will be. However, this court is not the Planning Commission, nor the experts on its staff, nor members of the city council. If the present zoning

is retained, a determination of the "neighborhood" to be served should be made, and upon that basis a decision given to the appellants as to permissible development plans for this district. At present, no such determinations have been requested or made.

The original building permit application and the permit itself did not comply with the requirements of Sections 105-2 and 106-3 of the Barberton Building Code. See *Bloom* v. *Wides*, (1955), 164 Ohio St. 138. When subsequently "revised" permits were obtained in the name of the owner, Austin Square, Inc., there was no compliance with Zoning Code Section 1163.20, subparagraph 3, requiring submission of the development plans to the Planning Commission, nor with Section 1171.20 requiring submission of drawings to the commission.

Appellants point out that a "site plan" was submitted to the commission by the Bernard Construction Company in connection with the first application and permit. Assuming that Bernard's submission can inure to the benefit of Austin Square, Inc., under its later application, the evidence shows that those plans were materially altered without submission to the Planning Commission. The orientation of the parking lanes, the number and location of traffic dividers and planting areas, the direction of traffic flow, even the quantity of square feet in the structure were changed. We are aware that the planning director testified that the plans were "essentially" the same. The plans themselves show substantial changes in the very matters upon which the commission should pass. The city attorney apparently felt that submission of these altered plans to the Planning Commission was not necessary. Perhaps he relied upon Section 105-5 of the Building Code. However, the later enacted provisions of the Zoning Code are quite explicit. See Sections 1181.06 and 1187.01. Accordingly, the three permits in evidence are not valid.

Appellants' brief contains some discussion of laches and equitable defenses. These equitable principles are available as defenses to equitable enforcement of private restrictive covenants. It seems very dubious that those doctrines have any place in a statutory injunction action to enforce regulatory laws, the violation of which affects the public interest, and which is

made a crime. In any event, upon review of the record, we find that appellees asserted their rights by timely action and that appellants were not misled.

The journal entry of the Common Pleas Court based upon the excellent opinion of Judge Lamneck grants a permanent injunction in rather broad terms. If either party is dissatisfied with the wording of that entry, this court will consider any proposal that may be offered.

A judgment will be entered for the plaintiffs-appellees, not inconsistent with this opinion.

*Judgment accordingly.*

BRYANT, P. J., concurs.

DUFFY, J., concurring. I concur on the basis of the last four paragraphs of the opinion.

BRYANT, P. J., DUFFY and DUFFEY, JJ., of the Tenth Appellate District, sitting by designation in the Ninth Appellate District.