Barbara **WHITTEMORE**, **Jack P. Wheby, Jr.**, **Irwin L. Berger, Nashville Golf and Athletic Club**, and **Brentwood Home-Owners Association**, Plaintiffs/Appellants,

v.

**BRENTWOOD PLANNING COMMISSION, CITY OF BRENTWOOD**, and **Liberty Place Associates, Ltd.**, Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Feb. 12, 1992.

On Petition for Rehearing March 4, 1992.

Permission to Appeal Denied by
Supreme Court May 26, 1992.

William M. Leech, Jr., James W. White, Waller, Lansden, Dortch & Davis, Nashville, for plaintiffs, appellants.

Robert H. Jennings, Jr., Jennings & Tomkins, Nashville, for defendant, appellee City of Brentwood.

Richard Lodge, Jeanette C. James, Bass, Berry & Sims, Nashville, for defendant, appellee Liberty Place Associates, Ltd.

## OPINION

KOCH, Judge.

This appeal arises from the Brentwood Planning Commission's approval of a site plan for a regional shopping mall. After the planning commission approved the site plan, a group of neighboring property owners filed suit in the Chancery Court for Williamson County asserting that the site plan was inconsistent with a zoning ordinance restricting uses in commercial retail districts to those specifically oriented to serving the general shopping and service needs of the citizens of Brentwood. The trial court upheld the planning commission's decision, and the property owners appealed. We affirm the trial court.

### I.

The City of Brentwood is an affluent suburban community south of Nashville. It is located in Williamson County and shares its southern boundary with the

neighboring City of Franklin. Over fifteen thousand persons reside in Brentwood, and approximately 90% of the property in the city is vacant or is being used for residential or agricultural purposes. The city is bisected from north to south by I–65, and most of its commercial enterprises are found along I–65 and Franklin Road to the north and along I–65 to the south.

In the early 1980's, several developers became interested in the property surrounding the intersection of I–65 and Moores Lane in the southernmost part of Brentwood. Three of the intersection's quadrants were in Brentwood, while the southwestern quadrant was in Franklin. Accordingly, not only the various developers but also Brentwood and Franklin got into a race to seize the financial advantage of being the first to construct a large-scale commercial development in the Moores Lane area.

Carter & Associates, a shopping center developer from Atlanta, became one of the entrants in the Moores Lane development race. It formed a partnership to acquire 97.1 acres on the southeast quadrant of the intersection on which it planned to construct "Liberty Place." Carter & Associates envisioned that Liberty Place would become a regional shopping center containing four to six anchor tenants, a multi-screen theatre, a business-type hotel, restaurants, grocery stores, banks, and service stations.

The property had four different zoning classifications when the Carter partnership purchased it. In March, 1986, the partnership requested the Brentwood City Commission to reclassify 92.14 acres to a B–2 (general business) classification. The city commission referred the request to the Brentwood Planning Commission for review. The planning commission considered the proposal on April 7 and again on May 5, 1986. After hearing from Brentwood residents both in favor of and opposed to commercial development in the Moores Lane area, the planning commission, by a 5 to 3

vote, recommended approval of the proposal.

Before the city commission took up the rezoning proposal again, an attorney representing several property owners asserted that Brentwood Ord. § 11–805 prevented the construction of a regional mall on property with a B–2 zoning classification.[1] The Carter partnership presented an opposing interpretation of the ordinance at the city commission's May 27, 1986 meeting, and the commission permitted several south Brentwood residents to speak against the rezoning proposal. The city commission approved the rezoning request by a 4 to 1 vote on June 9, 1986.

In April, 1987, the city commission amended Brentwood's zoning ordinance to consolidate several existing commercial classifications. The property having a B–2 classification was reclassified as C–2 "commercial retail district" property. Like the classification that preceded it, the new C–2 classification was subject to Brentwood Ord. § 11–805. Thus, the Liberty Place property was reclassified as C–2 and remained subject to Brentwood Ord. § 11–805.

The Carter partnership applied to the planning commission for approval of its site plan for Phase I, Retail 1 of Liberty Place in March, 1990. Phase I, Retail 1 consisted of a single 102,220 square foot building which would house a Home Depot hardware store. The planning commission deferred the request for two months, not because of the neighbors' objections to constructing a mall in the area but because of objections from Liberty Place's potential competitors. The planning commission eventually approved the site plan on May 15, 1990 by a 5–3 vote.

Several Brentwood property owners filed suit in July, 1990 challenging the approval of the site plan. In August, 1990, the planning commission approved several revisions to the site plan. In May, 1991, the trial court granted Liberty Place's and Brentwood's motion for summary judg-

---

**1.** Brentwood Ord. § 11–805 provides that, in areas zoned B–2, "[a]ny use not specifically oriented to serve the general shopping and service needs of the residents of Brentwood is prohibited."

ment and dismissed the property owners' complaint, finding that the approval of the revised site plan was supported by material evidence and that the revised site plan did not violate Brentwood Ord. § 11–805.

## II.

As a preliminary matter, we must decide whether the Brentwood Board of Zoning Appeals has jurisdiction to review the Brentwood Planning Commission's decisions concerning site plans that contemplate changes in a public street. The neighboring property owners insist that it does. We disagree. A board of zoning appeals does not have the authority to review a planning commission's decisions made pursuant to Tenn.Code Ann. § 13–4–104 (1987).

### A.

The Liberty Place development has undergone the same lengthy, torturous local review process that confronts most large commercial developments. Both the Brentwood Planning Commission and the Brentwood City Commission approved rezoning the property. Since the project required significant alterations to Moores Lane and the Moores Lane exit from I-65, Tenn.Code Ann. § 13–4–104 [2] also required the planning commission to review and approve the site plan for Phase I of the development.

After the planning commission approved the site plan, the neighboring property owners requested the board of zoning appeals to review the decision. However, the board of zoning appeals, by a divided vote, decided that it did not have authority to review the planning commission's decision.

### B.

State law empowers city commissions to create planning commissions and boards of zoning appeals.[3] Both administrative agencies contribute to the orderly development of the real property within the city. While their work is complementary, the agencies are coequal and independent.

The board of zoning appeals' authority extends only so far as state law permits. *Father Ryan High School v. City of Oak Hill,* 774 S.W.2d 184, 190 (Tenn.Ct.App. 1988). It cannot be extended by the city commission or by implication. State law permits, but does not require, city commissions to empower boards of zoning appeals to perform six functions: (1) making special exceptions [Tenn.Code Ann. §§ 13–7–206(a), –207(2)]; (2) interpreting zoning maps [Tenn.Code Ann. §§ 13–7–206(a), –207(2)]; (3) passing upon boundary line disputes [Tenn.Code Ann. § 13–7–206(a)]; (4) authorizing variances [Tenn.Code Ann. § 13–7–207(3)]; (5) deciding other special questions as authorized in the zoning ordinance [Tenn.Code Ann. § 13–7–207(2)]; and (6) deciding appeals from decisions of a municipal building commissioner or "other administrative official" [Tenn.Code Ann. §§ 13–7–206(b), –207(1)].

The Brentwood City Commission has specifically vested the following responsibilities in the board of zoning appeals: (1) acting on applications for special exceptions [Brentwood Ord. § 11–1804(2)]; (2) acting on applications for variances [Brentwood Ord. § 11–1804(3)]; and (3) hearing appeals from decisions of the building inspector or "other administrative official" [Brentwood Ord. §§ 11–1803, –1804(1)].

The neighboring property owners assert that Tenn.Code Ann. §§ 13–7–206(b), –207(1) and Brentwood Ord. §§ 11–1803, –1804(1) give the board of zoning appeals authority to review the planning commission's approval of Liberty Place's site plan. The plain language of both the state laws and the city ordinance does not support this interpretation.

Tenn.Code Ann. § 13–7–207(1) authorizes a board of zoning appeals

---

2. Tenn.Code Ann. § 13–4–104 requires that plans for proposed construction that entail widening, narrowing, or relocating any street or public way be submitted to the planning commission for review to determine whether they are consistent with the city's master plan.

3. Tenn.Code Ann. § 13–4–101(a) (1987) (establishment of municipal planning commissions); Tenn.Code Ann. § 13–7–205(a) (Supp.1991) (creation of boards of zoning appeals).

[t]o hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, or refusal made by the municipal building commissioner or any other administrative official in the carrying out or enforcement of any provision of any ordinance enacted pursuant to this part [part 2] and part 3 of this chapter.

Tracking the language of the state law, Brentwood Ord. § 11–1804(1) empowers the board of zoning appeals

[t]o hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, determination, or refusal made by the building inspector or other administrative official in the carrying out or enforcement of any provision of chapters 2 through 20 of this title.

On their face, the statute and ordinance apply only to decisions with regard to the zoning ordinance made by the "municipal building commissioner," the "building inspector," or "other administrative official." The planning commission is not another administrative official. Its decision to approve a site plan was not made as part of carrying out or enforcing the zoning ordinance but, instead, was based upon an independent grant of authority in Tenn.Code Ann. § 13–4–104. Accordingly, the board of zoning appeals properly decided that it did not have authority to review the planning commission's approval of Liberty Place's site plan.

### III.

The pivotal issue in this case is whether Brentwood Ord. § 11–805 prohibits Liberty Place because it is intended to be a regional shopping center. The neighboring property owners assert that the ordinance excludes commercial retail developments that will serve the shopping and service needs of people other than Brentwood residents. We do not construe the ordinance to be so restrictive.

### A.

■ Local land use planning decisions are basically legislative in character and are best left to local legislative bodies. *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342–43 (Tenn.1983); *Robertson County v. Browning–Ferris Indus. of Tennessee, Inc.*, 799 S.W.2d 662, 667 (Tenn.Ct.App.1990). Thus, courts reviewing either zoning ordinances or the administrative decisions implementing zoning ordinances are inclined to give wide latitude to the responsible local officials. They will not substitute their judgment for that of the local officials and will invalidate an ordinance or administrative decision only when it is illegal, arbitrary, or capricious. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641–42 (Tenn.1990).

■ Courts should construe zoning ordinances using the same principles used to construe statutes. *Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't*, 798 S.W.2d 254, 260 (Tenn.Ct.App.1990); 3 R. Anderson, *American Law of Zoning* § 18.02 (3d ed. 1986) ("Anderson"); 4 E. Yokley, *Zoning Law & Practice* § 25–7 (4th ed. 1979) ("Yokley"). Thus, when the language of an ordinance is clear, the courts should enforce the ordinance as written even if hardship results. If, however, the ordinance lacks precision, the courts should call upon their arsenal of interpretational rules, presumptions, and aids to arrive at the ordinance's meaning and intent. *Murray v. Board of Appeals of Barnstable*, 22 Mass.App.Ct. 473, 494 N.E.2d 1364, 1368 (1986).

■ Zoning ordinances should be free from vague terms and imprecise language because of the importance of the property interests involved. Anderson § 18.01. However, they need not be unerringly accurate. *Maurer v. Austin Square, Inc.*, 6 Ohio App.2d 41, 215 N.E.2d 724, 726 (1966). If a zoning ordinance does not define a term, the term should be given its natural and ordinary meaning, and the ordinance should be construed to carry out its general purpose. *Jagendorf v. City of Memphis*, 520 S.W.2d 333, 335 (Tenn.1974); Anderson § 18.13; Yokley § 25–6. However, any ambiguity in a zoning ordinance should be resolved in favor of an owner's unrestricted use of his or her property.

*State ex rel. Morris v. City of Nashville,* 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v. City of Oak Hill,* 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959); Anderson §§ 18.04, 18.05.

The meaning of a zoning ordinance and its application to a particular circumstance are, in the first instance, questions for the local officials to decide. *Sokol v. City of Lake Oswego,* 100 Or.App. 594, 786 P.2d 1324, 1325 (1990). Thus, the courts attach great significance to the local officials' prior interpretations of an ordinance, *see* Anderson § 18.09, but attach little weight to after-the-fact statements by local officials concerning their intentions or motivations for enacting an ordinance. *See Levy v. State Bd. of Examiners for Speech Pathology & Audiology,* 553 S.W.2d 909, 912 (Tenn.1977); *Davidson County v. Rogers,* 184 Tenn. 327, 333–34, 198 S.W.2d 812, 815 (1947); Anderson § 18.07 n. 70.

■ The courts, however, must ultimately take responsibility for construing statutes and ordinances. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn.1986); Anderson § 18.09. While they may defer to fairly debatable interpretations of ambiguous statutes and ordinances, they will not hesitate to set an interpretation aside if it is arbitrary and capricious, if it is contrary to the drafters' intent, or if it undermines the statute's or ordinance's validity.

### B.

■ Brentwood Ordinance § 11–805 is ambiguous and vague [4] because it contains no objective standards for determining whether a particular commercial retail use is "specifically oriented to serving the general shopping and service needs of the residents of Brentwood." We have found no comparable provision in any other jurisdiction and have been provided with no reliable legislative history to elucidate the city commissioners' intentions in enacting it.[5]

Thus, we must resort to the rules of construction to elucidate the ordinance's meaning.

■ The ordinance does not require that commercial retail developments be intended for the sole, exclusive, or even primary use of Brentwood residents. It requires only that these business must be "specifically oriented" toward Brentwood residents. While no commonly recognized meaning of these terms fits neatly in the context in which they are being used, we construe the entire ordinance to prohibit only those commercial retail uses that are not intended to serve, at least in part, the shopping and service needs of Brentwood residents. Thus, commercial retail developments designed to serve Brentwood residents, as well as others in a broader trade area, are not inconsistent with the ordinance.

This interpretation is consistent with the property owner's right to use its property and with the apparent purpose of Brentwood's zoning ordinance and master plan. Like other suburban communities, Brentwood must strike a balance between a strong, legitimate desire to maintain its residential character and its residents' increasing demand for convenient access to services and shopping. Shopping centers have been found to be an appropriate response to these conflicting pressures.

One authoritative treatise has pointed out:

> The movement of large numbers of people from the congested center to the more spacious suburbs has resulted in a dislocation not only of governmental services, but also of commercial facilities. The residents of newly developed suburban communities demand a full complement of customary services which are normally furnished by the municipality, and they are reluctant to return to the main business area of the community to obtain the goods and services which

---

**4.** The chairman of the planning commission noted that it was "the most cryptic statement I believe I've ever heard."

**5.** Similar provisions do not appear in any other classification in Brentwood's zoning ordinance. It is dissimilar from the provision found in all

other classifications, except open space residential districts, that prohibits "any use or structure that in the opinion of the planning commission would not be in keeping with the intent and character of the district."

usually are supplied by business enterprises.

\* \* \* \* \* \*

Enthusiasm for the construction of a new [shopping] center is likely to vary in relation to the proximity of the residents to the proposed use. Those nearby, who will feel the direct impact of the traffic, glare, noise, and litter, may be expected to prefer that the commercial use occupy a different site. Those who live at a safe but convenient distance will be predictably enthusiastic about the site. Thus, the problem of bringing business services to residential communities involves political problems, and may involve legal ones.

\* \* \* \* \* \*

Municipal legislative bodies have been singularly receptive to requests for zone changes to permit shopping centers. A change of this kind has virtue from the standpoint of the legislative decision maker. Suburban areas are faced with financial problems which are difficult to solve with the tax revenues yielded by residential property. A shopping center adds hundreds of thousands to the tax role and represents a quick source of new governmental income without a tax increase. In addition, a shopping center commonly is a wanted addition to a suburban community. The opposition from immediately affected landowners may be more vociferous than it is politically dangerous.

Anderson § 17.66, at 187–88.

Brentwood's own master plan reflects the same concerns discussed by Professor Anderson. It states:

In meeting local needs, commercial [uses] will increase by 440 acres to a total of 1,490, or 7.7 percent of all uses, by Year 2000. While service commercial (i.e. office, professional, personal services) occupies four times the space of retail commercial, a noticeable shift is projected toward retail space as consumers seek to purchase more items in their home community.

\* \* \* \* \* \*

The greater commercial demand is also driven by the increasing number of Brentwood residents being employed within the City. The current 22 percent of household heads employed in Brentwood is projected to rise to 30–34 percent by Year 2000. A concomitant rise is projected in total employment in Brentwood. Reflecting the increase in office and retail development, employment will double over the next 12 years, from the current 9,622 to 20,155.

Brentwood 2000 (Rev. Dec. 12, 1988), at iii–iv. With specific regard to the Moores Lane area, the master plan recommends that:

New commercial areas should be developed to meet the increased retail and service demand of the growing Brentwood population. Higher tax generating commercial developments are further needed to prevent an undue burden on residential property taxes.

Older community commercial areas should be encouraged in their renewal and revitalization so as to provide a broad base of business opportunities and to avoid blighting effects of structural deterioration.

1. New commercial areas should be zoned along Moores Lane between Franklin Road and I–65. Development should be of a planned character and guided by improved design standards as established by the City.

Brentwood 2000 (Rev. Dec. 12, 1988), at 49.

Under Brentwood's zoning scheme, commercial retail districts are "designed to maximize the compatibility of commercial retail and service activities for the benefit of residents of Brentwood and with the general residential character of Brentwood." Brentwood Ord. § 11–802. The planning commission can strike this balance without limiting commercial retail development to establishments catering exclusively to Brentwood residents. Accordingly, we decline to find that the planning commission's interpretation of Brentwood Ord. § 11–805 with regard to Liberty Place was arbitrary or capricious.

## IV.

As a final matter, we take up the neighboring property owners' assertion that the planning commission acted illegally and arbitrarily by declining to hear public comment at all its meetings concerning the Liberty Place development. This assertion lacks substance.

■ As far as this record shows, the planning commission considered various aspects of the Liberty Place development at six meetings beginning in 1986.[6] Each of these meetings complied with the Sunshine Law, Tenn.Code Ann. §§ 8–44–101, –108 (1988 & Supp.1991), and the commission accepted public comment at its April 7, 1986 and May 15, 1990 meetings. It specifically declined to receive additional public comment at its May 5, 1986 meeting when the chairman directed that an audience member be removed from the room.

The Sunshine Law gives citizens the statutory right to attend the meetings of state and local governmental boards and agencies. However, it does not give citizens the right to participate actively in all public meetings nor does it require public officials to depart from their agenda or to interrupt their business to accommodate the public's demands to be heard.

Brentwood's review of the Liberty Place development has afforded residents at least two, and apparently four, opportunities to communicate their support of or opposition to the project to the planning commission and to the city commission. Notwithstanding the May 15, 1986 incident before the planning commission, the residents have not been hesitant to make their opinions known, sometimes in blunt and intimidating terms.

The city commission and the community were aware of the scope of the Liberty Place project when the property was rezoned in 1986. This was the time when the application of Brentwood Ord. § 11–805 should have been resolved. The proceedings before the planning commission from and after March, 1990 were required by Tenn.Code Ann. § 13–4–104 and focused on the effect that Liberty Place would have on Moores Lane and on the interchange at I–65. Whether the development was consistent with Brentwood Ord. § 11–805 was not directly at issue.

We do not find that the manner in which the planning commission permitted public comment was illegal, arbitrary, or capricious. The forceable removal of a lawyer from one of the planning commission's meetings in 1986 simply does not taint the entire process. The neighboring residents' dissatisfaction with the planning commission's conduct calls for a political rather than a judicial remedy.

## V.

We affirm the summary judgment in favor of the City of Brentwood and Liberty Place Associates, Ltd. and remand the case to the trial court for whatever other proceedings may be required. We tax the costs, jointly and severally, to Barbara Whittemore, the Nashville Golf and Athletic Club, and the Brentwood Homeowners' Association and their respective sureties for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

## ORDER ON PETITION
## FOR REHEARING

The appellants have filed a Tenn. R.App.P. 39 petition for rehearing pointing out that additional information exists concerning the legislative history and prior administrative construction of Brentwood Ordinance No. 11–805. While this information may exist, it is not in the appellate record and, therefore, does not provide a basis for our reconsideration of the opinion heretofore issued on February 12, 1992.

The petition for rehearing is respectfully denied.

---

6. The Brentwood City Commission also considered the development at four meetings during the same period.