IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 9, 2009 Session

## WIRELESS PROPERTIES, LLC, v. THE BOARD OF APPEALS FOR THE CITY OF CHATTANOOGA, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 07-C-1305      W. Jeffrey Hollingsworth, Judge**

---

**No. E2008-01896-COA-R3-CV  - FILED SEPTEMBER 25, 2009**

---

The plaintiff filed a petition challenging the  grant of a building permit to Verizon Wireless.  The decision of the City was affirmed by the Board.  After the trial court conducted a hearing, it  affirmed and dismissed the petition.  The plaintiff appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John R. Anderson, Robert S. Grot, and Katherine Higgason Lentz, Chattanooga, Tennessee, for the Appellant, Wireless Properties, LLC.

Kenneth O. Fritz, Chattanooga, Tennessee, for the Appellee, City of Chattanooga.

Tracy C. Wooden, Chattanooga, Tennessee, for the Appellee, Verizon Wireless Tennessee Partnership.

**OPINION**

### I.  BACKGROUND

In February 2007, defendant Verizon Wireless Tennessee Partnership ("Verizon") applied to the defendant Board of Appeals ("Board") for the City of Chattanooga ("City") for a Special Permit to construct a wireless communication facility and an 80-foot monopole tower (pursuant to Article VIII § 107(16)(C) of the City's Zoning Ordinance).  The Board first considered Verizon's Special Permit application approximately one month later.  At that time, a representative of Wireless Properties, LLC ("Wireless"), indicated to the Board that it had secured a Special Permit of its own

for the construction of a tower site nearby, but had not yet signed a lease for that site.[1] Counsel for Verizon asserted that it had executed a lease for its site, in keeping with the requirement that the applicant for a Special Permit have an ownership interest in the land. The Board tabled the matter to allow both Verizon and Wireless to supply it with more information.

The following month, Verizon again appeared before the Board; counsel for Wireless appeared in opposition. At the meeting, a member of the City's planning staff stated that discussions were ongoing with Verizon to make the changes necessary for the communications facility to qualify for administrative approval. Such approval would negate the need for a Special Permit from the Board. Verizon subsequently made revisions to the location, layout, and design of the proposed communications facility and filed for administrative approval under the City's Zoning Ordinance ("Ordinance"), Article VIII, § 107(16)(A)(1).

On July 7, 2007, Wireless filed suit in Chancery Court seeking to enjoin the issuance of a building permit to Verizon. Three days later, however, the City's Department of Public Works issued Building Permit No. 07-11223 ("Building Permit") to Verizon for the construction of an 80-foot light pole to be used as a stealth wireless communications facility.

The next day, Verizon appeared before the Board to announce that it had made changes to the planned communications facility and that the City had issued the Building Permit. In view of the City's action, Verizon requested that it be allowed to withdraw its application for a Special Permit without prejudice. The request was granted by unanimous vote of the Board. Counsel for Wireless was present at the meeting, but no objections were made to either the issuance of the Building Permit by the City or the withdrawal of the Special Permit application by the Board.

A Chancery Court hearing was held in mid-July, at which time an officer of Wireless testified as follows regarding the potential injury Wireless faced with the issuance of the Building Permit to Verizon:

> Would allow other wireless providers the ability to come in and build existing poles of this nature directly beside existing pole [sic] such as the one we have at this location, which would devalue the tower that we have in place, as there are only a limited amount of tenants in each city or jurisdiction.

However, the officer later admitted that when Verizon filed its initial request for a Special Permit to build its own communication facility, Wireless had not even signed a lease for its own proposed site, nor had Wireless begun construction on its proposed tower site. Instead, upon learning of Verizon's Special Permit application, Wireless rushed to lease the site and erect its own tower in an attempt to bar the construction of a facility by Verizon. The officer noted that Wireless is the only company to have built a cell tower within the City in the previous five years, and it is their intention to control the market for cell tower space within the City. The Chancery Court ultimately

---

[1]The operations of Wireless include the construction of cell towers and the leasing of space upon such towers to wireless providers under long-term leases.

found that Wireless lacked standing to challenge the decision of the City to administratively approve the communications facility and dismissed the suit. *See Wireless Properties, LLC v. Verizon Wireless Tennessee Partnership*, No. 07-0597 (Hamilton County Ch. Ct., Aug. 27, 2007).

Meanwhile, Wireless filed an appeal with the Board regarding the City's decision to issue the Building Permit to Verizon. At a hearing held on September 12, 2007, Wireless asserted that the proposed Verizon communications facility did not qualify for administrative approval under the terms of the Ordinance.

Gary Hilbert, Director of the City's Land Development Office, stated, in regards to the requirements of the Ordinance, that "the pole is a structure by definition, and the antenna [is] concealed in the structure" and that the equipment on the ground "is concealed within a wall, and therefore, to us, that's architecturally indiscernible." He indicated that Verizon and the City had "worked very hard . . . trying to come up with what was architecturally indiscernible." He noted that at the request of the City, Verizon had moved the location of the pole, changed the screening to match the back of the building, and moved all the cables and wires underground. The result of all the work and all the changes was that "[the antennas] are concealed behind the top cap on the pole, and the equipment is screened, and that was our decision in making it architecturally indiscernible." The Board voted unanimously to approve the City's decision to grant the Building Permit to Verizon.

On November 9, 2007, Wireless filed a petition for a common law writ of certiorari in Circuit Court, seeking judicial review of the Board's judgment. A hearing was conducted on July 22, 2008. Two days later, the court issued an order dismissing Wireless' petition with prejudice. The trial court found that "the Board acted within its authority and the law and did not act arbitrarily or fraudulently and that there is evidence in the record to support the Board's decision." Wireless filed a timely notice of appeal.

## II. ISSUES

The issues presented by Wireless are restated as follows:

A. Whether the trial court erred in refusing to allow Wireless to present additional and/or new evidence at the trial.

B. Whether the trial court erred in failing to find that Board of Appeals for the City acted in an illegal, arbitrary, and/or capricious manner.

## III. STANDARD OF REVIEW

The proper vehicle for seeking judicial review of an administrative action by a local board of zoning appeals is a petition for common law writ of certiorari. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). A common law writ of certiorari provides quite limited judicial review. *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The scope of this review goes no further than determining whether the administrative body exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983); *see also Lafferty v. City of Winchester*, 46 S.W.3d 752, 758-59 (Tenn. Ct. App. 2000).

Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); reweigh the evidence, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metro Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). Common law writ of certiorari is simply not a vehicle that allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker. *Powell v. Parole Eligibility Review*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Judicial review under a common law writ of certiorari is limited to the record made before the board or agency, unless the court has permitted the introduction of additional evidence on the issue of whether the board or agency exceeded its jurisdiction, or acted illegally, capriciously, or arbitrarily. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987).

Because a common law writ of certiorari is an extraordinary judicial remedy, *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999), it is not available as a matter of right. *Yokley v. State*, 632 S.W.2d 123, 127 (Tenn. Ct. App. 1981). Decisions either to grant or to deny the writ are addressed to the trial court's discretion. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000). Accordingly, the courts review these decisions using the "abuse of discretion" standard. Under this standard, a reviewing court should not reverse a trial court's discretionary decision unless it applies an incorrect legal decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

## IV. DISCUSSION

### A.

Wireless contends that the trial court committed reversible error in limiting the scope of the new and/or additional evidence it sought to introduce. It asserts that Tenn. Code Ann. § 27-9-111(6) provides that hearings on writs of certiorari shall be upon the proof introduced before the board or commission contained in the transcript, and upon such other evidence as either party may desire to introduce. Pursuant to the statute, Wireless contends that a trial court may consider additional evidence to consider "whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or capriciously." *See Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 618 (citing *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980) ("[N]ew

-4-

evidence is admissible on the issue of whether the administrative body exceeded its jurisdiction or acted illegally, capriciously, or arbitrarily.")).

The trial court conducted a hearing to determine the suitability of new and/or additional evidence going to whether the Board acted arbitrarily, fraudulently, or outside the law and its authority. Wireless produced only one potential witness – a proposed expert in urban planning – and the court found that his testimony did not fit the previously established criteria. While Wireless claims that it also desired to present the testimony of City employees and members of the Board,[2] such proposed witnesses were not brought before the trial court at the hearing. The trial court therefore ruled that the matter would be heard upon the record of the Board and that no additional evidence would be allowed. Specifically, the trial court stated "that witnesses or other evidence relating to the intrinsic correctness of the decision made by Respondent Board of Appeals for the City of Chattanooga that was in the Petitioner's possession or reasonably could have been produced, and was not presented to the Board, cannot be introduced to prove arbitrary or capricious decision-making[.]"

"Generally, the admissibility of evidence is within the sound discretion of the trial court." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). "The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." *Id.*

Additionally, a court may not consider evidence not presented in a prior proceeding in determining whether material evidence in the record supports the prior decision. *See Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 786 (Tenn. Ct. App. 2003). Such evidence would not be relevant to whether the Board acted fraudulently, illegally, capriciously or arbitrarily in its decision if the Board was never given an opportunity to consider such evidence. Had Wireless desired to introduce other evidence at the trial, such as the testimony of the City employees, the evidence should have been presented by Wireless at the special hearing to provide the trial court with the opportunity to review such proposed evidence for admissibility. Having failed to bring such new and/or additional evidence for review as was ordered by the trial court, the argument of Wireless regarding evidentiary matters is considered waived on appeal under Tenn. R. App. P. 36(a).

Wireless presented no other evidence before the trial court at the special hearing. We find that the evidence at trial was properly limited to the record presented by the Board.

Additionally, a review of the record reveals that Wireless made no offer of proof as required by Tennessee law. We find therefore that Wireless waived the right to challenge the exclusion of the proposed evidence.

---

[2]Wireless claims it wanted to examine the City employees regarding how they determined what "architecturally indiscernible" should mean, and it wanted to question the Board members about whether the Board examined the Ordinance provision or merely adopted the City's interpretation of the provision.

The transcript of the Board hearing reflects that extensive evidence was received from both sides, with testimony and exhibits introduced for and against the issuance of the permit to Verizon. The evidence supporting the Board's decision to uphold the issuance of the Building Permit to Verizon exceeds the amount that is necessary to support a rational conclusion and to furnish a reasonably sound basis for the action under consideration. We find no abuse of discretion.

B.

Wireless further contends that the Board acted arbitrarily, capriciously, and illegally in that its determination was plainly contrary to the zoning laws.

Under Article VIII, § 107(16)(B) of the City's Zoning Ordinance, Special Permits are required for commercial radio, television, and microwave towers except as exempted by regulations of a particular zone. Article II of the Ordinance defines "Communication Tower" as "[a]ny structure that is designed and constructed primarily for the purpose of supporting any communications antenna, dish, or transmitter, including monopole communications towers and lattice communications towers." Article II defines "Monopole Communications Tower" as a "communication facility which consists of monopolar structure, erected on the ground to support communication antennas and connected appurtenances."

Special Permit applications require public hearings, with notice to the general public and neighboring landowners. Article VII §§ 104-105. The authority of the Board to grant Special Permits is set forth in Article VIII, § 107:

> The Board shall be empowered to hear and decide whether Special Exceptions Permits (hereinafter referred to as Special Permits) shall be issued as proposed, based on a site plan map furnished by the applicant and other supporting documentation as appropriate. . . . [t]he Board shall determine that the proposed use will not be in conflict with the adopted plans and zoning districts of Chattanooga. . . . other criteria, including but not limited to noise, traffic generated by proposed use, odors, et cetera that may be detrimental to public health, safety or welfare of adjacent property owners and the surrounding community may be considered in reviewing the following cases. . . .

Wireless argues that the Ordinance requires Special Permits for the construction of communications towers. It claims that Verizon's "light pole" was, in fact, a tower designed and constructed "primarily for the purpose of supporting [a] telecommunications antenna." The company further contends that the circumstances in which a Special Permit is not required relate to equipment only – not towers. Thus, according to Wireless, a reading of the Ordinance reveals that a cell tower or monopole communications tower may only be constructed with a Special Permit. Wireless contends that it has followed the procedure set forth in the Ordinance to construct eight monopole towers in the City, and is aggrieved by the Board's decision to allow Verizon to circumvent the procedure. Wireless claims the value of the communications towers it has built across the City pursuant to the regulated Special Permit process has decreased as a result of the

-6-

Board's decision to illegally allow construction of the Verizon light pole without a Special Permit. According to Wireless, the actions of the City and the Board have created a precedent for the construction of similar towers that would further decrease the value of Wireless' existing towers.

Wireless further asserts that the Building Permit was issued in violation of the Ordinance and in contradiction of its meaning and intent. Wireless claims the Board acted without a full understanding of what the Ordinance requires. It contends the City attempted to interpret the Ordinance with the assistance of Verizon, resulting in a construction of the law to conform with the application, rather than a consideration of whether the application met the requirements of the law. According to Wireless, the exceptions to the Special Permit process do not allow administrative approval for the construction of new monopole towers, unless the tower itself is contained within an addition or feature of a structure that is architecturally indiscernible from the building or structure to which it is to be a part. Wireless claims that while the antennas are concealed within the light pole, the pole itself was not architecturally harmonious with anything around it. Therefore, according to Wireless, the Board acted arbitrarily, capriciously, and illegally by affirming the City's decision to illegally issue the Building Permit.

The General Assembly has delegated to local officials the authority to apply and enforce zoning ordinances. *See e.g.*, Tenn. Code Ann. §§ 13-7-109 (establishing the powers of county boards of zoning appeals); 13-7-110 (providing for county building commissioner and for the enforcement of zoning regulations through the withholding of building permits); and 13-7-111 (describing modes of enforcement and penalties for violation). A city and its board therefore have wide latitude in the interpretation of a city's codes and ordinances. Courts are hesitant to interfere with zoning decisions, and will refrain from substituting their judgments for that of local government officials. *Lafferty*, 46 S.W.3d at 758. "The meaning of a zoning ordinance and its application to a particular circumstance are, in the first instance, questions for the local officials to decide." *Whittemore v. Brentwood Planning Comm'n,* 835 S.W.2d 11, 16 (Tenn. Ct. App. 1992). "[A]dministrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action." *McCallen*, 786 S.W.2d at 641.

The City issued the Building Permit to Verizon pursuant to the Concealed Devices section of Article VIII, § 107(16)(A). Article VIII, § 107(16)(A) provides several methods pursuant to which Special Permits are not required, including the provision at issue:

> Concealed Devices – Communications equipment which is concealed within a building or structure so that it is architecturally indiscernible may be permitted in all zoning districts subject to building permit procedures and standards. Architecturally indiscernible shall mean that the addition or feature containing the antenna is architecturally harmonious in such aspects as material, height, bulk, scale and design with the building or structure to which it is to be a part.

Article VIII, § 107(16)(A)(1). If the above referenced standards can be met, then a facility can be constructed without obtaining a Special Permit from the Board, subject only to the ordinary building permit procedures of the City.

In support of its argument, Wireless asserts that Mr. Hilbert testified that the City's decision-making process did not consider whether or not the tower itself was "architecturally indiscernible." Rather, consideration was given to whether the equipment and antenna were concealed within and/or architecturally indiscernible from the store and the tower, respectively (Mr. Hilbert commented that the light pole is a structure and that administrative approval was proper if the antennas were "concealed within a building or a structure."). Wireless further claims that the Board at no point considered whether there was any evidence that the pole was "architecturally harmonious" with the building or structure to which it is to be a part.

The evidence reveals that the Board adequately considered the evidence regarding whether or not the light pole was architecturally harmonious with the property, including the building and other previously existing (and currently existing) light poles. The testimony revealed that the pole was moved to the back of the shopping center as a result of the discussions with the City. One Board member noted that the pole is "totally oblivious to everybody." The Board clearly considered the issue – it simply disagreed with Wireless' interpretation of the Ordinance. The meaning of the Ordinance is for the City to decide. *See Whittemore*, 835 S.W.2d at 16. The Board adopted this same interpretation of the Ordinance and approved the decision of the City to issue the permit to Verizon.

Wireless has provided us no case law or prior Board decisions that demonstrate the Board has reached a conclusion that is contrary to the requirements of the Ordinance. Instead, the company only urges an alternative interpretation of the Ordinance, one raised before the Board and trial court and rejected. We find that the Board's actions were within its authority, and its interpretation was consistent with the legal principles governing it. The decision was based on a reasonable interpretation of the Ordinance.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are taxed to the Appellant, Wireless Properties, LLC. The case is remanded for collection of costs assessed below, pursuant to applicable law.

_____
JOHN W. McCLARTY, JUDGE