IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 16, 2006 Session

## CITY OF JACKSON v. MOHAMED SHEHATA

**Direct Appeal from the Circuit Court for Madison County**
No. C-04-528      Donald H. Allen, Judge

No. W2005-01522-COA-R3-CV - Filed July 31, 2006

A businessman purchased a house in Jackson, Tennessee for the use of his employees. While he did not live at the residence, the businessman allowed the employees to park the equipment used in the furtherance of his business at the residence. The equipment consisted of parking lot sweepers, pickup trucks, and trailers holding lawn-care equipment. The house is located in an area of the city zoned for residential use only. After receiving complaints from the neighbors, the city discussed the situation with the businessman in an effort to have him remove the equipment. When he failed to do so, the city sent him a letter asking that he remove the equipment or face further action. When this did not produce results, the city issued the businessman a citation for violation of the applicable residential zoning ordinance. The city court ruled that the businessman's conduct violated the ordinance. The businessman appealed to the circuit court, which likewise entered a ruling in favor of the city. The businessman has appealed to this Court arguing that the applicable ordinance is impermissibly vague and that the citation failed to notify him that storing business equipment at the residence constituted a violation of the ordinance. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Danny R. Ellis, Jackson, TN, for Appellant

Lewis L. Cobb, Sara E. Barnett, Jackson, TN, for Appellee

**OPINION**

**I.**
**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Mohamed Shehata ("Mr. Shehata" or "Appellant") was born in Egypt but migrated to the United States approximately eighteen years ago. Mr. Shehata owns and operates a property management business, a lawn-care business, and a parking lot sweeping business. At some point, he purchased a residence located at 23 Leebark Cove in Jackson, Madison County, Tennessee. Leebark Cove is zoned by the City of Jackson ("City" or "Appellee") for single-family residential uses, and approximately ten single-family homes are situated in the cove.

Mr. Shehata does not live at the residence he purchased on Leebark Cove. Instead, the home is occupied by approximately six individuals, some of whom are Mr. Shehata's cousins. At the time of the events giving rise to this litigation, all of the individuals living in the residence were in the United States legally pursuant to temporary employment visas. Each of the individuals worked for Mr. Shehata at either his lawn-care business or parking lot sweeping business. Mr. Shehata allowed them to live at the residence as part of their compensation package or out of deference to his family members, and he paid all of the utilities for the home.

Mr. Shehata owns several vehicles used in the lawn-care and parking lot sweeping businesses. These consist of pickup trucks, trailers attached to the trucks for hauling lawn-care equipment, and parking lot sweepers. The parking lot sweepers weigh 9000 pounds, seat two to three people, are equipped with flashing yellow lights on the cab, and display commercial license plates issued by the State of Tennessee. The employees do not own their own personal vehicles, which Mr. Shehata attributed to the fact that the employees are in the United States temporarily pursuant to their employment visas. Accordingly, Mr. Shehata allowed the employees to park the trucks, trailers, and parking lot sweepers at the residence on Leebark Cove. In addition to using the vehicles to travel to and from work, Mr. Shehata asserted that the employees were free to use the vehicles, including the parking lot sweepers, for personal use. Mr. Shehata stated that the pickup trucks and trailers holding the lawn-care equipment are gone from the residence during the daytime hours, while the parking lot sweepers leave the residence around 8:30 p.m. and return in the morning.

Sammy Elgin ("Mr. Elgin"), a resident of Leebark Cove, complained to his councilman, David Cisco ("Councilman Cisco"), about the noise and congestion generated by the vehicles parked at Mr. Shehata's residence. According to Mr. Elgin, the character of the neighborhood changed after Mr. Shehata's employees moved into the residence. He complained that the employees parked the vehicles in the driveway, the yard, and adjacent to the roadway disrupting access to the cove. Further, he complained of the constant movement of vehicles at the residence and noted that parking lot sweepers had loud diesel engines and made a beeping sound when they backed out of the driveway. Mr. Elgin began documenting the activity at the residence both day and night by taking photographs over a significant period of time.

Councilman Cisco subsequently drove by the residence to verify that the vehicles at issue were in fact being housed at the residence. Councilman Cisco stated that, in addition to the pick-up trucks, trailers, and parking lot sweepers, he noted six to eight sedans parked at the residence as well. In turn, he contacted Paul George ("Mr. George"), an employee with the City's planning department, to request that Mr. George investigate and ascertain Mr. Shehata's compliance with local zoning ordinances. Mr. George likewise went to the residence and observed the vehicles parked there.

As an employee of the City's planning department, Mr. George is responsible for drafting and interpreting the City's zoning ordinances. Mr. George stated that, since the area was zoned for residential uses only, he determined that Mr. Shehata was violating the ordinance by storing business equipment at the residence. Specifically, Mr. George interpreted the ordinance to preclude the storage of a parking lot sweeper and landscaping equipment at the residence. Mr. George conceded that the other vehicles parked at the residence did not violate the applicable ordinance. Thereafter, Mr. George discussed the perceived violation with Mr. Shehata and asked that he store the vehicles at another location zoned for commercial uses. According to Mr. George, a citizen dissatisfied with his interpretation of an ordinance may appeal that interpretation to the City's Board of Zoning Appeals. Mr. Shehata, however, did not pursue such action. Mr. Shehata acknowledged that he spoke with Mr. George about the perceived violation, but he maintained that Mr. George told him the matter was a "gray area."

On March 16, 2004, Mr. George sent a letter to Mr. Shehata informing him of the following:

> We have noticed that you have parking lot sweeping equipment stored at [23] Leebark Cove that is associated with your business. Since the property is within an RS-1 (Single Family Residential) District, storage of this type of equipment is prohibited by the City of Jackson Zoning Ordinance. Furthermore, we have received several complaints from neighbors that other business related activities associated with you [sic] business are taking place at this address, which is also prohibited.
>
> I am aware that you have some of your employees living at this address, which is allowed by the Zoning Ordinance. However, business activities or storage of business related equipment and materials are prohibited at this address and will need to be discontinued immediately upon your receipt of this letter to avoid further action by the City of Jackson.

When Mr. Shehata refused to comply with the City's request, he received a citation to appear in the City Court of Jackson for "Violation of City Zoning & Abandoned Vehicle Codes."[1] The City Court of Jackson ultimately ruled in favor of the City and ordered Mr. Shehata to pay a fine for violating the ordinance.

Mr. Shehata subsequently filed an appeal to the Circuit Court of Madison County.[2] Approximately one month before the trial got underway in the circuit court, Mr. Shehata erected a fence on the property to block the neighbors' view of the vehicles and equipment. After conducting a bench trial, the circuit court verbally entered its findings of fact and conclusions of law, which it subsequently incorporated into the final judgment. The trial court determined that the intent behind the ordinance at issue was to maintain the residential character of the neighborhood. Further, the court found Mr. Shehata's testimony to the effect that the employees could use the parking lot sweepers for personal use not to be credible. Instead, the trial court held that the parking lot sweepers and lawn-care equipment were used solely for business purposes. The trial court did find that the City failed to prove that Mr. Shehata was operating a business out of the residence on Leebark Cove. The Court concluded, however, that the ordinance at issue did prohibit the storage of the parking lot sweepers and lawn-care equipment at the residence. The court held that, even though Mr. Shehata built a fence on the property, the ordinance continued to be violated by virtue of the fact that the equipment remained on the premises. Finally, the trial court concluded that Mr. Shehata continued to violate the ordinance in spite of the March 16, 2004 letter informing him of the City's interpretation of the ordinance to prohibit the storage of such equipment in a residential neighborhood. In its final judgment, the circuit court ruled in favor of the City and ordered Mr. Shehata to pay $17,500, with $5,000 of that amount being suspended contingent upon Mr. Shehata

---

[1] The citation charged Mr. Shehata with violations of city ordinances for having an abandoned vehicle parked at the premises. Counsel for the City subsequently noted that prosecution of these violations had been abandoned, apparently due to Mr. Shehata's removal of the offending vehicle. Accordingly, only Mr. Shehata's violation of the residential zoning ordinance is at issue.

[2] Section 53 of the Charter of the City of Jackson provides that a party may appeal the decision of the City Court of Jackson to the Circuit Court of Madison County.

removing the offending vehicles from the property.[3]   Mr. Shehata timely filed an appeal to this Court to contest the trial court's ruling.[4]

## II.
### ISSUES PRESENTED FOR REVIEW

On appeal, Mr. Shehata presents the following issues for our review:

1.     Whether the trial court erred when it concluded that the zoning ordinance at issue was not impermissibly vague so that the Appellant had notice that his conduct constituted a violation of the ordinance; and
2.     Whether the trial court erred when it ruled that the Appellant violated the applicable zoning ordinance.

For the reasons set forth more fully herein, we affirm the judgment of the trial court.

## III.
### DISCUSSION

On appeal, Mr. Shehata argues that the applicable zoning ordinances are impermissibly vague as they do not define "business equipment" or "business activity" so as to place him on notice of what is prohibited by the ordinances.  Interpretation of zoning ordinances, like statutes, is question of law, and we will review such issues de novo without affording a presumption of correctness to the trial court's legal conclusions.  *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005).

Article V, Section 2 of the Zoning Ordinance of the City of Jackson governs an RS Single Family Residential District and provides that "[u]ses are limited to single family residences and such

---

[3] Article VIII, Section 5 of the Zoning Ordinance of the City of Jackson provides that "[a]ny person . . . who violates . . . any of the provisions of this Ordinance shall, upon conviction thereof, be subject to a fine of fifty (50) dollars or imprisoned for not more than thirty (30) days or both."  This provision further provides that "[e]ach day such violation continues shall be considered a separate offense."  The Tennessee Constitution provides: "No fine shall be laid on any citizen of this state that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars."  TENN. CONST. art 6, § 14. "Because the ordinance at issue prescribes that each day in violation constitutes a separate offense, the appropriate fine is fifty dollars per day for each [day] the appellant was found to be in violation [of the ordinance]."  *Town of Nolensville v. King*, 151 S.W.3d 427, 433 (Tenn. 2004).

[4] "[T]he law now appears settled that proceedings for a municipal ordinance violation are civil in nature, at least in terms of technical application of procedure and for pursuing avenues of appeal."  *City of Chattanooga v. Davis*, 54 S.W.3d 248, 259 (Tenn. 2001).  Thus, even though the city cited Mr. Shehata for violating the city ordinance and the lower courts imposed a fine, an appeal of the lower court's decision properly lies in this Court.  *See City of Chattanooga v. Robards*, No. E2003-01340-COA-R3-CV, 2004 Tenn. App. LEXIS 704, at *6 n.6 (Tenn. Ct. App. Oct. 28, 2004).

nonresidential uses as are intended primarily to provide service to the district." JACKSON, TENN., ZONING ORDINANCE, art. V, § 2(A) (2002). The ordinance further provides that property and buildings lying within such district shall only be used for certain enumerated purposes, to include use as a detached single family dwelling and accessory uses, provided such accessory uses "are incidental to the principal use and do not include any activity commonly conducted as a business." *Id.* § 2(B)(3). The Board of Zoning Appeals is empowered to grant a variance for, among other things, a customary home occupation to be conducted on the property within such districts. *Id.* § 2(C)(7). The ordinance considers a home occupation to be an accessory use to a residence, but it provides: "No person who is not a resident of the dwelling may be employed in connection with the home occupation at the dwelling unit or on the property where said home occupation is located." *Id.* art. VI, § 7(A). The ordinance governing home occupations further provides: "Machinery that causes objectionable noise, odor, vibration, interferes with radio, telephone or television reception or produces other obnoxious effects to neighboring properties is prohibited and cannot be approved by the Board of Zoning Appeals as [a] special exception." *Id.* § 7(F). "Vehicles associated with the home occupation shall be limited to one (1) with a maximum axle load capacity of one and one-half tons." *Id.* § 7(H). "No traffic shall be generated by such home occupation in greater volumes than would normally be expected in a residential neighborhood."[5] *Id.*

Leebark Cove is zoned an RS-1 Single Family Residential District. "This district is intended primarily to be single family residential with a low population density." *Id.* art. V, § 3(A). Property and buildings lying within such district shall only be used for, among other things, "[a]ny use permitted in an RS Single Family Residential District." *Id.* § 3(B)(1). The Board of Zoning Appeals may permit as a special exception "[a]ny use permitted as a special exception in a RS Single Family Residential District." *Id.* § 3(C)(1).

The parties do not dispute that Mr. Shehata's residence is located within a residential district and that the parking lot sweepers, pickup trucks, and the trailers holding lawn-care equipment are used in the furtherance of his businesses. The City concedes that the words "business equipment" and "business activity" cannot be found when one reviews the language of the aforementioned zoning ordinances applicable to Mr. Shehata's property. We also note that conspicuously absent from the ordinances relied upon by the City is any provision expressly regulating the storage of vehicles used in the furtherance of a business conducted off premises.

"Due process of law requires, among other things, notice of what the law prohibits." *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005); *see also Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 531–32 (Tenn. 1993). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due

---

[5] As previously noted, the City initially charged Mr. Shehata with conducting a home occupation in violation of the ordinance. The City abandoned this effort, apparently when it learned that Mr. Shehata did not live at the residence. Accordingly, the trial court determined, and the parties do not dispute, that Mr. Shehata was not operating a business out of the residence on Leebark Cove.

process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). As the United States Supreme Court has noted:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policeman, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (footnotes omitted). Thus, "[i]f an ordinance is so vague that persons of common intelligence must necessarily guess at its meaning, it will not pass constitutional scrutiny." *Hutsell v. Jefferson County Bd. of Zoning Appeals*, No. E2004-00968-COA-R3-CV, 2005 Tenn. App. LEXIS 243, at *7 (Tenn. Ct. App. Apr. 26, 2005).

Zoning ordinances, being in derogation of the common law, must be strictly construed in favor of a property owner's right to the free use of his property. *City of Oak Hill v. State ex rel. First Christian Church*, 492 S.W.2d 915, 916 (Tenn. 1973); *City of Knoxville v. Brown*, 260 S.W.2d 264, 267 (Tenn. 1953); *Red Acres Imp. Club, Inc. v. Burkhalter*, 241 S.W.2d 921, 923 (Tenn. 1951); *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville & Davidson County*, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990). In evaluating the zoning ordinances at issue in this case, we are mindful of the following:

> Local land use planning decisions are basically legislative in character and are best left to local legislative bodies. *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342-43 (Tenn. 1983); *Robertson County v. Browning-Ferris Indus. of Tennessee, Inc.*, 799 S.W.2d 662, 667 (Tenn. Ct. App. 1990). Thus, courts reviewing either zoning ordinances or the administrative decisions implementing zoning ordinances are inclined to give wide latitude to the responsible local officials. They will not substitute their judgment for that of the local officials and will invalidate an ordinance or administrative decision only when it is illegal, arbitrary, or capricious. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641-42 (Tenn. 1990).
>
> Courts should construe zoning ordinances using the same principles used to construe statutes. *Tennessee Manufactured Hous. Ass'n v. Metropolitan Gov't*, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990); 3 R. Anderson, American Law of Zoning § 18.02 (3d ed.

1986) ("Anderson"); 4 E. Yokley, Zoning Law & Practice § 25-7 (4th ed. 1979) ("Yokley"). Thus, when the language of an ordinance is clear, the courts should enforce the ordinance as written even if hardship results. If, however, the ordinance lacks precision, the courts should call upon their arsenal of interpretational rules, presumptions, and aids to arrive at the ordinance's meaning and intent. *Murray v. Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 494 N.E.2d 1364, 1368 (1986).

Zoning ordinances should be free from vague terms and imprecise language because of the importance of the property interests involved. Anderson § 18.01. However, they need not be unerringly accurate. *Maurer v. Austin Square, Inc.*, 6 Ohio App. 2d 41, 215 N.E.2d 724, 726 (1966). If a zoning ordinance does not define a term, the term should be given its natural and ordinary meaning, and the ordinance should be construed to carry out its general purpose. *Jagendorf v. City of Memphis*, 520 S.W.2d 333, 335 (Tenn. 1974); Anderson § 18.13; Yokley § 25-6. However, any ambiguity in a zoning ordinance should be resolved in favor of an owner's unrestricted use of his or her property. *State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v. City of Oak Hill*, 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959); Anderson §§ 18.04, 18.05.

The meaning of a zoning ordinance and its application to a particular circumstance are, in the first instance, questions for the local officials to decide. *Sokol v. City of Lake Oswego*, 100 Or. App. 594, 786 P.2d 1324, 1325 (1990). Thus, the courts attach great significance to the local officials' prior interpretations of an ordinance, *see* Anderson § 18.09, but attach little weight to after-the-fact statements by local officials concerning their intentions or motivations for enacting an ordinance. *See Levy v. State Bd. of Examiners for Speech Pathology & Audiology*, 553 S.W.2d 909, 912 (Tenn. 1977); *Davidson County v. Rogers*, 184 Tenn. 327, 333-34, 198 S.W.2d 812, 815 (1947); Anderson § 18.07 n. 70.

The courts, however, must ultimately take responsibility for construing statutes and ordinances. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986); Anderson § 18.09. While they may defer to fairly debatable interpretations of ambiguous statutes and ordinances, they will not hesitate to set an interpretation aside if it is arbitrary and capricious, if it is contrary to the drafters' intent, or if it undermines the statute's or ordinance's validity.

*Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 15–16 (Tenn. Ct. App. 1992).

Turning to the present case, we cannot say that the zoning ordinances applicable to Mr. Shehata's property did not place him on notice of the fact that storing parking lot sweepers and trailers holding lawn-care equipment on his property in Leebark Cove would violate the ordinance. When we interpret statutes, we employ numerous presumptions; one being that, when the legislative body enacts legislation, it is presumed to act with the purpose of achieving a desired goal. 82 C.J.S. *Statutes* § 310 (1999). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Another presumption we employ when interpreting legislative enactments is that such enactments are presumed to be constitutional. *Fairbank v. United States*, 181 U.S. 283, 287 (1901); *City of Oakland v. McCraw*, 126 S.W.3d 29, 39 (Tenn. 2003).

We also must remain cognizant of the overriding purpose for enacting residential zoning. A fundamental purpose of zoning legislation may be to create and maintain residential districts to exclude businesses. 8 Eugene McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 25.96, at 328–29 (3rd ed. 2000); 101A *Zoning and Land Planning* § 58 (2005). We cannot supply omissions in a zoning ordinance, 82 C.J.S. *Statutes* § 320 (1999), but "[a]bsolute precision in drafting prohibitory legislation is not required since prosecution could then easily be evaded by schemes and devices," *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983). "Courts do not void enactments on vagueness grounds merely because they could have been drafted with greater readability."[6] *Hutsell v. Jefferson County Bd. of Zoning Appeals*, No. E2004-00968-COA-R3-CV, 2005 Tenn. App. LEXIS 243, at *7 (Tenn. Ct. App. Apr. 26, 2005) (citing *Wilkins*, 655 S.W.2d at 916).

While the ordinance at issue is not a model for clear and precise drafting, a person of common intelligence can be expected to understand that the ordinances at issue would prohibit the storage of the vehicles and equipment of the magnitude at issue in a residential neighborhood. Mr. Shehata attempts to argue on appeal that, despite the size of the parking lot sweepers, his employees are permitted to use them for personal use. He contends that they are similar in size to a sport utility vehicle, and he maintains that his employees using them for personal use is no different than a plumber driving his company truck to and from work each day. The trial court found Mr. Shehata's testimony in this regard to be lacking in credibility and determined that, based upon the proof before the court, the parking lot sweepers and lawn-care equipment were used solely for business purposes and not personal use. We find no clear and convincing evidence in the record before this Court to warrant a departure from the trial court's determination of credibility. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Moreover, the resolution of this case is limited to the facts before the Court. We are not prepared to issue an advisory opinion as to what types of equipment may or may not comply with the ordinance, other than to say that the parking lot sweepers and lawn-care equipment at issue in this case necessarily exceed the size and magnitude of a single plumber's truck or van.

_____

[6] Of course, it is advisable for a municipality to draft its zoning ordinances to be as clear as possible.

Mr. Shehata offers an additional argument on appeal which actually undermines his reliance on the vagueness doctrine. He contends that, while he did not apply for a variance to conduct a customary home occupation and could not receive one because he does not live at the residence on Leebark Cove, the provision governing home occupations permits the storage of a vehicle with a "maximum axle load capacity of one and one-half tons." JACKSON, TENN., ZONING ORDINANCE, art. VI, § 7(H) (1967). Mr. Shehata fails to mention, however, the other portions of the home occupation ordinance, which provides that "[n]o traffic shall be generated by such home occupation in greater volumes than would normally be expected in a residential neighborhood," *Id.* § 7(H), and "[m]achinery that causes objectionable noise, odor, vibration . . . or produces other obnoxious effects to neighboring properties is prohibited and cannot be approved by the Board of Zoning Appeals as [a] special exception," *Id.* § 7(F). The provisions in that portion of the ordinance governing home occupations coupled with the overriding purpose for creating a residential zone evinces a clear intention on the part of the City to prohibit the storage of the equipment at issue in a residential neighborhood. Accordingly, we find Mr. Shehata's vagueness argument to be without merit.

Next, Mr. Shehata argues that the trial court erred when it ruled that he violated the applicable zoning ordinance because he had no notice that the City was charging him with violating the applicable ordinance for storing business equipment at the residence. He argues that the original citation only charged him with unlawfully conducting business activity at his residence. He maintains that, upon appealing the case to the circuit court, the City abandoned its original position and attempted to prove that he was violating the statute by storing business equipment at his residence. Mr. Shehata urges this Court to view the issuance of a citation as a criminal matter and rule that, since he was not provided with notice of the charges against him, his conviction must be overturned. We find this argument to be without merit.

The citation issued to Mr. Shehata does reference a violation of Article V, Section 3 of the Zoning Ordinance, which governs an RS-1 Single Family Residential District. In the narrative portion of the citation, however, it states: "The above individual has been notified about illegally conducting business activities at this address and has not corrected the problem." We do not have the benefit of a transcript of the hearing before the City Court of Jackson to ascertain what proof was presented during that proceeding. Our supreme court has stated that, "at least in terms of technical application of procedure and for pursuing avenues of appeal," proceedings to adjudicate a violation of municipal ordinance are civil in nature, therefore, the rules governing civil practice will control. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 259–60 (Tenn. 2001).

It is true that the City appears to have abandoned its argument that Mr. Shehata was conducting business out of his residence on Leebark Cove when the case was appealed to the circuit court. We cannot find, however, that Mr. Shehata was blind-sided by this change in positions to such an extent that he suffered some form of prejudice. We note that Mr. George testified that he discussed the storage of the equipment at the residence with Mr. Shehata on several occasions. When the discussions failed to produce results, he sent a letter to Mr. Shehata prior to the issuance of the citation specifically stating that "business activities *or storage of business related equipment and materials* are prohibited at this address and will need to be discontinued immediately upon your

receipt of this letter to avoid further action by the City of Jackson." (emphasis added). Thus, "it did not require any undue strain on [his] mental processes to figure out the reasons for the [citation]." *Richards v. Lewisburg Alcoholic Beverage Comm'n*, 543 S.W.2d 852, 853 (Tenn. 1977) (holding that a written notice for review of a beer permit should have stated the ground for revocation, but the permit holder could ascertain the reason for the revocation by virtue of the fact that her husband previously had been arrested for selling beer to minors).

Moreover, since this matter is in the nature of a civil proceeding, we find that, even if Mr. Shehata had no notice of the basis for the citation prior to the commencement of the hearing in the circuit court, the issue of whether the storage of equipment constituted a violation of the ordinance has been tried by consent of the parties. *See* TENN. R. CIV. P. 15.02 (2005) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Clayborne v. Toshiba Am., Inc.*, No. 01-A-01-9406-CH-00242, 1995 Tenn. App. LEXIS 112, at *4 n.1 (Tenn. Ct. App. Feb. 22, 1995) (holding that the parties tried by consent the issue of whether the use of a parcel of property constituted a violation of the applicable zoning ordinance). Accordingly, we hold that the trial court did not err in this regard.

## IV.
### CONCLUSION

We hold that the trial court did not err when it determined that the Appellant had notice that his conduct violated the zoning ordinance at issue. Nor did the trial court err when it found the Appellant to be in violation of that ordinance. Accordingly, we affirm the ruling of the trial court. Costs of this appeal are to be taxed to the Appellant, Mohamed Shehata, and his surety, for which execution, if necessary, may issue.

_____
ALAN E. HIGHERS, JUDGE

-11-