**Jim Gary HEDGEPATH and wife, Linda C. Hedgepath, Plaintiffs/Appellees,**

**v.**

**Thomas Leon NORTON, and, Rutherford County Board of Zoning Appeals, Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Nashville.

April 24, 1992.

Application for Permission to Appeal Denied by Supreme Court July 20, 1992.

William Kennerly Burger, Roger W. Hudson, Murfreesboro for defendants/appellants.

Thomas R. Smith, Nashville for plaintiffs/appellees.

FARMER, Judge.

The appellant, Thomas Leon Norton, appeals from the trial court's order remanding this cause of action to the Rutherford County Board of Zoning Appeals for its revocation of a conditional use permit previously issued to Norton and enjoining Norton from operating his property as an automobile salvage yard or junkyard.

*Facts*

In February 1986 one Tommy Pinkston requested a conditional use permit to operate a salvage yard on his property located on Spantown and Almaville Roads in Rutherford County. The minutes of the Rutherford County Board of Zoning Appeals reflect that the following events and discussion transpired at the Board's February 26, 1986, meeting:

Mr. Pinkston requested a conditional use permit to operate a salvage operation. The property is located on Spantown and Almaville Road. The property is accessed by a private easement. A petition was submitted bearing 15 names stating that they approve this request. Mr. Pinkston noted that he wishes to keep a clean, buffered area that is not an eyesore to the community, and would help clean up the county by providing a method to dispose of old abandoned autos and trucks. After more discussion it was suggested that the board impose a condition that approval be only for Mr. Pinkston, and that a new owner be required to obtain new approval. It was noted that the area is screened. Mr. Cantrell noted that abandonment would have to be followed by property clean up. Mr. Pinkston agreed.

Mr. McAdoo made a motion that the request be approved conditioned upon Mr. Pinkston using the access off of Spantown Road, and that sale of the property require a re-approval. Ms. Lester seconds and the vote for approval was unanimous.

In August 1988 the defendant Norton submitted an application for a conditional use permit to operate an automobile salvage yard on the same property. The minutes of the August 1, 1988, Board meeting reflect the following:

Mr. Norton had submitted application for a Conditional Use Premit [sic] to operate an automobile salvage yard on a six acre tract in a Residential 15 zone, located approximately 1,757 feet off Almaville Road as referenced by Tax Map: 76, Parcel No. 21.

The director noted that a Conditional Use Permit had been granted the previous owner, Tommy Pinkston, in 1986. That permit was issued subject to using the access off Spantown Road and the sale of the property would require re-application.

Chairman Cantrell opened the floor for public comment, there was no opposition.

Chairman Cantrell closed the public hearing and brought the meeting back in session.

Mr. Norton presented a series of pictures to demonstrate the present character of the area, which he proposed to allow to remain or improve. He stated that he would like to establish along with the salvage yard a small business: Tire repair service and a tow service and would hope to employ 3 or 4. It was noted that he would be required to make application for approval of the expanded services at which time he should present a site plan showing the location of buildings on the property. All structures must meet building codes.

It was noted that a $3 \times 3$ sign would be located at the right of way entrance at Almaville Road.

Mr. Hayes moved, seconded by Mrs. Lester to grant approval for Mr. Norton's request for a conditional use permit to operate a salvage yard on his property. The motion carried unanimously by roll call vote (7 for).

At its February 15, 1989, meeting the Board announced that it was reconsidering issuance of the conditional use permit to Norton. The Board minutes reflect the following:

Chairman Cantrell announced reconsideration of Conditional Use Permit No. BZA 88–12 issued to Mr. Norton allowing operation of a limited auto salvage yard on a six acre tract.

The director summarized the activities surrounding the permit as follows: 1–17–86, Irvin Leaver and Tommy Pinkston (BZA 86–1) filed application with BZA seeking approval of an auto salvage operation in the Agricultural/R–15 zone; a legal notice was published in the Daily

News Journal February 15, 1986; and on February 26th in accordance with the published legal notice the BZA held a public hearing and approved the request with the following conditions: 1) access off Spantown Road, 2) a maximum of 100 vehicles stored at one time, and 3) that a re-approval be required if the property is sold. In June 1988 the property was purchased by Leon Norton who filed application (BZA 88–12) seeking re-approval of the use as required by the BZA upon approval of BZA 86–1; a legal notice was published in the Daily News Journal July 21, 1988; and on August 1, 1988 the BZA held a public hearing on BZA 88–12 and granted re-approval for Mr. Norton to conduct an auto salvage operation.

Further, adjoining property owners, Mr. Jim Gary Hedgepath and wife, Linda C. Hedgepath had filed a petition in Chancery Court, a temporary restraining order was issued and after a preliminary hearing was held an agreement was filed, which states, "Upon presentation of the captioned matter to the Court on November 2, 1988, it was announced to the Court by the parties, through their counsel, that an interim agreement had been reached under which the restraining order heretofore effected against the Defendant (Norton) would be dissolved and of no further effect; that the matter would be returned voluntarily to the Board of Zoning Appeals to give the Plaintiffs (Hedgepath) and any other surrounding landowners the opportunity to present their views on the matters previously considered in the conditional use application of THOMAS LEON NORTON; and that by agreement, the Rutherford County Board of Zoning Appeals shall forward written notice of a reconsideration hearing to all surrounding landowners, whose properties are near the affected tract owned by NORTON. Other matters are reserved. It appearing to be appropriate for the Court to implement the parties' agreement, IT IS ACCORDINGLY ORDERED AND DECREED in accordance with the above findings and provisions, this 20th day of December, 1988."

As per the agreed order to remand to BZA, a legal notice for reconsideration of the Norton CUP was published in the Daily News Journal on February 5th and the adjoining property owners were notified by mail.

Ken Burger, attorney for Leon Norton, stated that the history presented is correct, wished to emphasize and asked BZA to consider that Hedgepath purchased the adjoining property in April 1988, two months prior to Norton's purchase from Pinkston; and Hedgepath knew at the time of purchase that Pinkston had a CUP to use the property for the identical purpose that Mr. Norton intends to use the property. He noted that Mr. Hedgepath's objections in this case are unclear. During a lengthy hearing in Chancery Court, it was stated that all proper procedures had been followed by the Board of Zoning Appeals and by Mr. Norton in the initial consideration last August. Rather than continuing to struggle through a lengthy trial in Chancery Court, all parties voluntarily agreed to bring the application back to BZA, allow notices to be sent, and allow the opposition the opportunity to speak. Mr. Norton stated a required limit of 100 cars for crusher to come in; he was not aware of Spantown Road access requirement, because deed calls for access off Almaville Road. Mr. Pinkston stated that he was aware of restrictions on CUP, and that he had worked with neighbors to upgrade the access off Almaville Road.

Chairman Cantrell opened the floor to public hearing. Tom Smith, attorney for Mr. and Mrs. Jim Gary Hedgepath, stated facts brought forth in the hearing before Chancellor Stegall included notation that in the event Mr. Pinkston sold property the buyer would re-apply. He stated that Mr. Hedgepath was unaware of Pinkston junkyard and did not know the full extent of his operation since he only saw a few cars, certainly not of the magnitude of the proposed Norton operation. He cited the narrow eight foot wide dirt road easement off Almaville Road and contended that the regulations were not followed prior to the August

hearing, that a notice in the newspaper was not enough notice since most of the neighbors do not read the Daily News Journal, had they known they would have been present as they were this date, since their property and lives are affected by the Norton junkyard..... Ruth McBride (attended Pinkston hearing) stated that she lives in LaVergne, but owns adjoining property on which Mr. Pinkston·offered to buy ROW, the property is open in back and subject to vandalism; citing broken glass and scraps along ROW, Mrs. McBride's objections related to being a widow and she is tired of being run over, feels the secluded area does not need commercial operation..... Judy Stanley, who sold property to Hedgepath, stated that in her opinion Mr. Pinkston had tried to meet specifications, but there had been problems with glass and the trees were being destroyed...... Irvin Leaver who shared the permit with Pinkston stated that Mr. Norton had improved the community with his clean up and the operation would be an auto salvage—not a junkyard. Mr. Leaver noted that most of the people present and objecting did not live in the community, if people who live in the community oppose they should speak up..... Eugenia McDonald, who lives in the neighborhood, a nice community, stated that Mr. Hedgepath had worked hard to clean up his place and make liveable, nobody wants to live next to a junkyard..... John Hedgepath, who does not live in the community, stated that his father had given him property to build on, there are only two suitable building sites for he and his sister. His site is approximately 75 yards from Norton's garage. He plans to build but does not want to be next to a junkyard. He stated that there is no city water, area is served by well, questioned possible contamination from oils, etc. from junk cars...... Hedgepath [sic] daughter stated that she lives in the community approximately two miles away, heart is in area, did not know of Norton application..... John Taylor, recently purchased adjoining property, was aware of junkyard, but not access off Almaville Road, stated that he does not want to go by junkyard, is concerned for property appearance, well, branch to water cattle...... Jim Hedgepath expressed oposition [sic], does not want to live next to junkyard..... Lisa Mass stated that she does not want to live around junkyard in Almaville Community..... Mrs. Tommy Pinkston stated that noone [sic] objected or complained when they spent $1,800.00 to improve road, difficult when Mrs. McBride won't let a small branch be cut from tree to widen road. The public hearing was closed.

Mr. McAdoo noted that the area was in a mess last August, Mr. Norton had planned to clean up and build a house on the site, which Mr. Norton stated are his intentions this date.

In response to Mrs. Lester's question as to where these people were before, the director stated that at first hearing a notice was run in the DNJ and property owners were notified by mail; at the second hearing a notice was run in the DNJ; prior to this hearing on the advice of the county attorney a notice was run in the Daily News Journal and notices were mailed to approximately adjoining property owners.

Chairman Cantrell stated that the application should be treated as a new proposal.

Mr. Hayes moved, seconded by Mr. Hall "to approve the Conditional Use Permit for Mr. Norton, subject to the following conditions: limited to 100 cars, a 3' × 3' sign maximum, existing vegetation buffering to remain". The motion carried by roll call vote (Cantrell, Hayes, McAdoo, and Hall voting for, Lester voting against).

In April 1989 the plaintiffs, Jim Gary and Linda C. Hedgepath, instituted the present proceeding against the Rutherford County Board of Zoning Appeals, alleging that the Board's granting to Norton of the conditional use permit was in violation of the Rutherford County Zoning Resolution. In June 1990 the trial court entered an order

allowing Norton to be named as a party respondent in the proceeding.

The sole issue presented on appeal is whether the trial court erred in determining that the Board acted arbitrarily and capriciously in its issuance of the conditional use permit to Norton.

### The Rutherford County Zoning Resolution

Article XVII, Section 17.02, of the Rutherford County Zoning Resolution states that the R–15 Residential District "is intended to provide for the development and continued maintenance of a wide variety of housing types with a relatively low overall density of development." Section 17.02 also allows other uses, such as schools, health care facilities, and "specified services associated with or compatible with the residential uses," to be located in the R–15 district subject to the issuance of a conditional use permit.

Article VI, Section 6.01, defines conditional uses as "those uses which may have some special impact, or uniqueness because of their size, special requirements, or other possible safety hazards, but may be compatible with other uses if they are properly designed." Section 6.01 further provides that "conditional uses are not permitted by right, only upon appeal, and in conformance with the standards set forth in section 7.02 as determined by the Board."

Article VII, Section 7.02, contains the standards of general applicability for conditional use permits. Under Section 7.02, the applicant must present evidence at a public hearing, which evidence must establish the following:

A. That the proposed building or use will not have a substantial or undue adverse effect upon adjacent property, the character of the neighborhood, traffic conditions, parking, utility facilities, and other matters affecting the public health, safety, and general welfare.

B. That the proposed building or use will be constructed, arranged, and operated so as to be compatible with the immediate vicinity and not interfere with the development and use of adjacent property in accordance with the applicable district regulations.

C. That the proposed building or use will be served adequately by essential public facilities and services such as highways, streets, parking spaces, drainage structures, refuse disposal, fire protection, water, and sewers; or that the persons or agencies responsible for the establishment of the proposed use will provide adequately for such services.

D. That the proposed building or use will not result in the destruction, loss, or damage of any features determined by the Board, to be of significant natural, scenic or historic importance.

E. That the proposed building or use complies with all additional standards imposed by the Board.

In all proceedings pursuant to the Resolution, including the above Section 7.02, the burden of proof rests with the developer. Rutherford County Zoning Resolution art. I, § 1.07.

Article II, Section 2.02, defines as "automotive dismantlers and recyclers" any entity engaged in the business and/or providing facilities for the purpose of recovering parts from automobiles and trucks which have been wrecked or otherwise rendered inoperable as transportation vehicles with said parts recoverd [sic] being for resale and further reduce used automobiles and trucks to a condition capable of salvage for metal scrap content by scrap processors.

We agree with the Chancellor's conclusion that the proposed automobile salvage yard or junkyard clearly fits within this definition. Further, Chart 4 of the Zoning Resolution characterizes this use as "industrial."

### Review of the Board's Action

Our review of the Board minutes indicates that Norton presented the following evidence at the Board meetings. At the August 1988 meeting, Norton "presented a series of pictures to demonstrate the present character of the area, which he proposed to allow to remain or improve." He also indicated that a 3' × 3' sign would be

located at the Almaville Road entrance. At the February 1989 meeting Norton "stated a required limit of 100 cars for crusher to come in." In response to a complaint "that the area was in a mess last August," Norton stated his intentions to clean up the property and build a house on the site. Norton presented no other evidence at the meetings.

During the meeting, the Board chairman opened the floor for a public hearing. Several area citizens expressed their concerns about the project, and a few expressed their support for Norton's proposed use. Discussion also occurred regarding the Hedgepaths' knowledge when they bought their property of Pinkston's prior use of the subject property as an automobile salvage yard or junkyard.

 Under the common law writ of certiorari, our review is limited to whether the Board of Zoning Appeals exceeded its jurisdiction or acted fraudulently, illegally, or arbitrarily. *Hoover Motor Express Co. v. Railroad & Public Utilities Commission,* 195 Tenn. 593, 599–600, 261 S.W.2d 233, 236 (1953). An action of an administrative agency which is not supported by material evidence is arbitrary and void. *Watts v. Civil Service Board,* 606 S.W.2d 274, 276–77 (Tenn.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981).

In *Pace v. Garbage Disposal District,* 54 Tenn.App. 263, 390 S.W.2d 461 (1965), this Court was presented with the question of what type of evidence was required to sustain the action of an administrative agency. The Court concluded that "more than a scintilla or glimmer of evidence is required. It must be of a substantial, material nature." 54 Tenn.App. at 267, 390 S.W.2d at 463. Stated another way, the administrative record must contain "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Id.* "Mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence." *Mullins v. City of Knoxville,* 665 S.W.2d 393, 396 (Tenn. App.1983).

 Our review of the administrative record indicates that the evidence presented fails to rise to the substantial and material level required to support the Board's decision. Under Article XVII, Section 17.02, *supra,* the Board may issue conditional use permits in the R–15 Residential District for uses "associated with or compatible with the [district's] residential uses." Article VI, Section 6.01, of the Zoning Resolution indicates that, in deciding whether to issue conditional use permits, the Board is to determine whether the standards set forth in Article VII, Section 7.02, have been met. We find no material evidence in the record to indicate that the Board made this determination or that Norton presented the required evidence upon which the Board could base such a determination. Likewise, the record contains no material evidence that the proposed use, an automobile salvage yard, is "associated with or compatible with" the area's residential uses.

Because we conclude that the record contains no material evidence which would support the Board's decision, we affirm the trial court's holding that the Board acted arbitrarily and capriciously in granting the conditional use permit to Norton for him to operate an automobile salvage yard or junkyard within the R–15 Residential District.

The Chancellor found it difficult to conceive of the proposed use, which the Zoning Resolution characterized as industrial, being compatible with a residential district. The Chancellor determined, therefore, that the Board acted arbitrarily in allowing residential land to be used for industrial purposes. Norton takes issue with these conclusions. Because we base our holding on the lack of material evidence to support the Board's issuance of a permit, we decline to speculate as to whether the proposed use of operating an automobile salvage yard could ever be compatible with the R–15 district's residential uses. After reviewing this matter, we would simply agree that the present record fails to reveal material evidence of such compatibility.

The judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellant for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.