IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 19, 2015 Session

**JIMMIE D. GULLEY, d/b/a KLEEN-WAY DISPOSAL v. ROBERTSON COUNTY PLANNING & ZONING COMMISSION**

**Appeal from the Chancery Court for Robertson County**
**No. CH12CV160     Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2015-00734-COA-R3-CV-Filed May 12, 2016**
_____

This is a zoning dispute arising out of a trash-collection business being operated in an agricultural-residential zone. The county planning and zoning commission determined that the business did not comply with existing zoning. The business owner sought review before the board of zoning appeals and, when the board affirmed the commission's decision, filed a petition for certiorari review in chancery court, which held that the board's action was not arbitrary and was supported by material evidence. We affirm the judgment of the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Jimmie D. Gulley d/b/a Kleen-Way Disposal.

Jarod C. Richert and Clyde W. Richert, III, Springfield, Tennessee, for the appellee, Robertson County Planning & Zoning Commission.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

This appeal involves a zoning dispute. Jimmie D. Gulley ("Mr. Gulley") has operated a private trash-collection business, Kleen-Way Disposal, on a 31.2 acre parcel of land in Robertson County since 1997, at which time the property was zoned "A-Agriculture." In

2005 the property was rezoned "AG-2 (Agricultural/Residential District)."[1]  Kleen-Way Disposal has approximately 4,000 clients, about half of whom live in Robertson County. Each morning, drivers report to Mr. Gulley's property, obtain a garbage truck or pickup truck, and drive around Robertson County to pick up customers' trash, which is then taken to the Robertson County refuse collection center.  The trucks return to the property each afternoon and remain parked there overnight.

After neighbors complained about the presence of garbage, old cars, and trucks on Mr. Gulley's property, the Planning and Zoning Commission of Robertson County ("the Commission") investigated and determined that the business did not conform with the zoning classification and should cease to operate in that location.  The Commission sent Mr. Gulley a letter in August 2010, informing him that his business activities violated the applicable zoning.  Mr. Gulley sought review of this determination by the Board of Zoning Appeals ("the Board"), arguing that his business should be permitted as either a "home occupation" or an "essential service."[2]

The Board reviewed the matter at its June 2011 meeting and, after hearing testimony from Mr. Gulley and affected residents, voted to postpone a decision until the July meeting. At that meeting, the Board voted to defer the matter for six months to give the Planning Commission staff time to make recommendations for amending the Zoning Resolution in order to permit Mr. Gulley to apply for a special use permit to operate the business in the zone.  At the Board's February 2012 meeting, it received a report from Mr. Bob Hoge, a planner, as well as heard from Mr. Gulley, his attorney, and several Robertson County residents.[3]  The Board members unanimously approved a motion that "Mr. Gulley's business

---

[1]  The dispute in this case arises from the interpretation and application of the Robertson County Zoning Resolution ("Zoning Resolution").  Although the record does not contain the entire Zoning Resolution, it is apparent that it constitutes the zoning plan for portions of Robertson County, as authorized by Tenn. Code Ann. § 13-7-101 *et seq*.

[2]  As defined in the Zoning Resolution, a "home occupation" is "a gainful occupation or profession conducted entirely within the principal dwelling unit or approved accessory building by members of the household residing on the premises.  Employment of persons not living on the premises shall be limited to one (1) individual. . . ."  The Board concluded that Mr. Gulley's business was not a home occupation, and in the final order, the trial court held "[T]hat the decision of the Planning and Zoning Commission denying Plaintiffs assertion that his business is exempt from the zoning resolution because his business constitutes a 'CUSTOMARY INCIDENTAL HOME OCCUPATION' was not arbitrary, and was supported by material evidence."  Mr. Gulley does not argue on appeal that his business might qualify as a home occupation; rather, he asserts that his trash collection business is an essential service, the definition of which will be discussed later in this opinion.

[3]  Mr. Hoge reported on what happened in the period between the two meetings as the Planning Commission staff fulfilled the charge it had been given; Mr. Hoge reported that:

2

doesn't fit into AG-2 as a 'Home Occupation' or 'Essential Services' and the Planning Commissions Office should take no legal action for six (6) months."

On March 26, 2012, Mr. Gulley filed a petition in Robertson County Chancery Court, seeking certiorari review of the decision of the Board; the Commission timely filed an answer along with a Notice filing "the transcript of the proceedings pertaining to the property and the action in controversy."[4] After determining that the administrative record was not sufficient to allow for a proper review, the court remanded the matter to the Board to "find the facts and law upon which the Board bases its decision." At its October 2014 meeting, the Board heard from and asked questions of Mr. Gulley, listened to the comments of several Robertson County residents, and voted unanimously that Mr. Gulley's business could not operate in the current location due to the property's zoning. On October 24, a transcript of the meeting was filed with the court, and a final hearing subsequently set for January 12, 2015.

After the hearing, the Chancellor entered a Memorandum Opinion and Order, holding in pertinent part:

> [T]hat the decision by the Zoning Commission denying Plaintiff[']s assertion that his business was exempt from the zoning resolution because he performs an "ESSENTIAL SERVICE" was not arbitrary, and was supported by material evidence in the record.
> ***
> [T]hat the Plaintiffs business activity is not afforded protection under T.C.A. 13-7-208(b)(1).

Mr. Gulley appeals, articulating the issue as follows: "Whether Tennessee's 'grandfather' clause affords relief to Mr. Gulley based upon ambiguous language of the Robertson County Zoning Resolution in effect when Mr. Gulley initiated his business operations in 1997."

---

> Regulations were prepared and submitted to the Planning Commission in December 2011. The Planning Commission voted 4-5 not to recommend it. At that time, we advised several County Commissioners of what had happened and since [the] Planning Commission had not recommended it, it would take a County Commissioner to bring it up from the floor, and as of this date, this has not occurred.

[4] This "transcript" consisted of photographs of Mr. Gulley's property, a 2007 tax card, building permits, 2011 real estate assessment data, a 2003 warranty deed conveying the property to Mr. Gulley and his wife, tax and zoning maps, notes of telephone conversations, various notes, letters, and diagrams of the property, excerpts of the Zoning Resolution, Mr. Gulley's application for variance/special exceptions/administrative review, and minutes of the Board's meetings. The record does not show that any objection was made to the introduction of these documents as part of the record at the trial level or on appeal. In our review of the Board's action, we have assumed that the documents were before the Board in the course of its deliberations.

## II. STANDARD OF REVIEW

The vehicle for reviewing decisions of local boards of zoning appeals is through the common law writ of certiorari. *Hoover, Inc. v. Metro Bd. of Zoning Appeals of Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997) (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)). Under the common law writ of certiorari, the reviewing court must examine whether the municipal agency acted illegally, arbitrarily, fraudulently, or in excess of its jurisdiction. *McCallen*, 786 S.W.2d at 638. In doing so, the court determines "whether there is any material evidence that supports the action of the administrative agency." *Laidlaw Envtl. Servs. of Nashville, Inc. v. Metro. Bd. of Health for Nashville & Davidson Cnty.*, 934 S.W.2d 40, 49 (Tenn. Ct. App. 1996) (citing *Lansden v. Tucker*, 204 Tenn. 388, 321 S.W.2d 795 (1959)). Courts must not "reweigh the evidence" or "scrutinize the intrinsic correctness of the decision," but independently review the record to "determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'" *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). A challenge to the evidentiary foundation for a local zoning decision presents a question of law, which we review *de novo* with no presumption of correctness. *Id.*, 46 S.W.3d at 759. This Court's review of the evidence on appeal is no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

## III. ANALYSIS

Mr. Gulley contends that his business was permitted as an "essential service" under the zoning regulations in effect when he began the business in 1997, and thus this activity should be protected under the "grandfather clause" found in Tenn. Code Ann. § 13-7-208(b)(1).[5]

---

[5]  Tenn. Code Ann. § 13-7-208(b)(1) provides as follows:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

In construing the above language, our Supreme Court has "characterized th[is] provision as a 'grandfather clause'" and observed that:

The record contains several excerpts from the Zoning Resolution. One such excerpt, effective June 19, 1995, and thus in effect when Mr. Gulley's business began, sets forth "regulations" for the "A, Agriculture District"; this regulation permits agricultural services, crop and animal raising, plant and forest nurseries, detached single-family and duplex dwellings, and "essential services" on properties in the district such as Mr. Gulley's. The provision related to "essential services" states the following:

Essential Services

Includes the maintenance and operations of the following installations:

Electrical and Gas Substations
Electrical, Gas, Water, and Sewer Distribution and Collection Lines
Pumping Facilities for Water and Sewer Systems
Rights-of-Way for Transportation Modes
Telephone Switching Facilities

The collection, transportation, or storage of refuse was not included as an "installation," the maintenance or operation of which would have constituted an "essential service" in 1997; indeed, garbage, trash, or refuse is not mentioned. Mr. Gulley's business would not have constituted an "essential service" as that term was utilized in 1997. Because it did not, the protection of the grandfather clause at Tenn. Code Ann. § 13-7-208(b)(1) is not available. For the statute to apply, Mr. Gulley would have to show that, *inter alia,* "the use to which [he] put [his] land was permitted prior to the zoning change." *Lamar Advert. of Tennessee, Inc. v. City of Knoxville*, 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995); Tenn. Code Ann. § 13-7-208(b)(1). Because Mr. Gulley is unable to make this showing, he is not entitled to the protection of the grandfather clause.

Mr. Gulley makes the further argument that "[b]ecause the 1997 resolution did not define 'essential services,' the 2005 definition of Essential Services should be retroactively

---

Ambiguities in zoning ordinances that would restrict a property owner's free use of property are construed in favor of the property owner's unrestricted use of the property. The same rule of statutory construction does not apply to the grandfather clause in Tenn. Code Ann. § 13-7-208(b)(1). Once it is determined that a zoning restriction applies to a particular piece of property, any ambiguity in the application of Tenn. Code Ann. § 13-7-208(b)(1)'s grandfather clause must be construed against the landowner because the grandfather clause amounts to an exception to an otherwise valid land use restriction.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 474-75 (Tenn. 2012) (internal citations and quotations omitted).

5

applied and interpreted to apply since the business's inception."[6] We do not agree. Mr. Gulley has not cited any authority for the proposition that zoning may be made retroactive, other than as what may be inherent in applying the grandfather clause. In any event, as explained below, the evidence supports the Board's conclusion that Mr. Gulley's business did not constitute an "essential service" as that term is defined in the Zoning Resolution as follows:

> Publicly or privately owned facilities or systems for the distribution of gas, electricity, steam or water, the collection and disposal of sewage or refuse; the transmission of communications; or similar functions necessary for the provision of public services. . . . Essential services are divided into three classes:
>
> Class 1[:] Transmission lines (above and below ground) including electrical, natural gas, and water/wastewater distribution lines; pumping stations, lift stations and telephone switching facilities (up to 200 square feet);
>
> Class 2[:] Elevated water storage tanks; package treatment plants; telephone switching facilities (over 200 square feet), substations, or other similar facilities used in connection with telephone, electric, steam, and water facilities; raw water treatment facilities.
>
> Class 3[:] Generation, production, or treatment facilities such as power plants, sewage treatment plants, and landfills.

Mr. Gulley's use of his property as a terminal for his trucks does not fit within any of the classes of "essential services" and his property does not contain a "facility or system" for the collection and disposal of sewage or refuse, as contemplated in "Class 3." Mr. Gulley stated in a May 17, 2010, letter contained in the Planning Commission records that "[His property] is not a trash collection or disposal site or facility, only parking, a private shop and private office." When he appeared before the Board at the October 2014 meeting, he stated that the garbage his employees pick up is taken to the transfer station; that on the days when the station is closed when they arrive, the garbage remains in the truck overnight; and that "garbage that's left in the garbage truck overnight or incidental to the collection is not

---

[6] In their briefs discussing this issue, the parties refer to a "2005 Resolution," as well as a "2005 definition of Essential Services." The definition of "essential services," which the trial court as well as the parties employed, is contained in the record before us in Article II of the Zoning Resolution, dated February 27, 2006. No issue is raised that the definition in the record is not the one that was in effect in 2005. In addition, the parties and the trial court state that the property at issue was rezoned in 2005; there is nothing in the record to confirm this rezoning. Again, no issue is raised pertaining to the property's zoning as AG-2.

considered storage of garbage." These facts are material evidence supporting the Board's determination.

Mr. Gulley includes an argument in his brief under the heading "Mr. Gulley has been in lawful operation of his business since 1997 and should be afforded protection because he has taken substantial steps in establishing his business operations." In support of this argument, he relies upon evidence that he had obtained a business permit through local agencies and a building permit from the Planning and Zoning Commission to install a mobile home on the property in 2004, and argues that "based upon the zoning classification and applicable definitions, he was not required to seek and obtain a special use permit and/or an equivalent approval from any county governmental agency."

Mr. Gulley's argument is similar to that addressed in *Smith Cty. Reg'l Planning Comm'n v. Hiwassee Vill. Mobile Home Park, LLC*, wherein our Supreme Court held that Tenn. Code Ann. § 13-7-208(b)(1) protects property owners who "ha[ve] taken substantial steps in the construction of [the establishment] prior to the change in the Zoning Regulations." 304 S.W.3d 302, 317 (Tenn. 2010). That protection, however, is premised upon there being a use which was permitted before the zoning change. *Id.* (citing *Gackler Land Co. v. Yankee Springs Twp.,* 398 N.W.2d 393, 403 (Mich. 1986) (Levin, J., dissenting)). As noted earlier, the operation of Mr. Gulley's business was not permissible under the 1997 Zoning Resolution, and thus, he was not in lawful operation of his business since 1997 and is not entitled to continue his business in contravention of the Zoning Resolution.

## IV. CONCLUSION

The decision of the Board is supported by substantial and material evidence, and the Board did not act arbitrarily or illegally in reaching its decision; accordingly, we affirm the action of the Board. The case is remanded to the trial court with instructions to remand the case to the Robertson County Planning and Zoning Commission for such action as may be necessary to enforce the Board's decision.

RICHARD H. DINKINS, JUDGE

7