FILED

02/20/2024

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 20, 2023 Session

## FRANK REED ET AL. v. TOWN OF LOUISVILLE, TENNESSEE ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-20992          David R. Duggan, Judge**

_____

### No. E2023-00438-COA-R3-CV

_____

This appeal involves a decision by the Town of Louisville Board of Zoning Appeals ("BZA") that was upheld on review by the Blount County Circuit Court ("trial court"). At its May 5, 2020 hearing, the BZA granted appellee William Mattison's request for a variance to allow him to construct an accessory, non-attached garage on his improved real property, which structure would purportedly exceed the height limit set by town ordinance. The appellants, Frank and Tina Reed, who own property adjacent to Mr. Mattison's property and who had opposed Mr. Mattison's request for a variance, filed a petition for writ of certiorari with the trial court on July 5, 2022, seeking review of the BZA's decision. The trial court conducted hearings on the Reeds' petition in January and February 2023. On February 27, 2023, the trial court entered a final order affirming the BZA's decision to grant a variance to Mr. Mattison. The trial court found that there was a rational basis for the BZA's decision, which was supported by material evidence, and that the BZA had acted within its scope of authority and discretion. The Reeds timely appealed. Determining that there existed no material evidence of any particular characteristic of the real property warranting the grant of a variance, we reverse the trial court's judgment affirming the BZA's decision and vacate the BZA's grant of a variance to Mr. Mattison as illegal and outside the BZA's authority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Matthew A. Grossman and Richard E. Graves, Knoxville, Tennessee, for the appellants, Frank Reed and Tina Reed.

Wayne A. Kline and Barton C. Williams, Knoxville, Tennessee, for the appellee, William Mattison.

Brian R. Bibb, Knoxville, Tennessee, for the appellees, Town of Louisville, Tennessee, and Town of Louisville Board of Zoning Appeals.

**OPINION**

I.  Factual and Procedural Background

On April 9, 2022, Mr. Mattison filed a residential building permit application with the BZA, seeking to construct a non-attached garage or "accessory building" on his improved real property located in Louisville, Tennessee.  Mr. Mattison stated in the application that the garage would be 2,400 square feet in size and twenty-one feet tall at its highest point.  Along with the building permit application, Mr. Mattison sent a letter to the BZA requesting the approval of a height variance for the proposed accessory building.  In this letter, Mr. Mattison explained that the building itself would be fourteen feet tall and that the roof would peak at twenty-one feet.  He also stated that the building would be the "same as the existing building that I own, on the adjacent parcel 3302."

The BZA placed Mr. Mattison's request for a variance on the agenda for its May 5, 2022 meeting.  Adjacent property owners were notified of Mr. Mattison's request for a variance and the upcoming hearing.  The meeting report from the May 5, 2022 BZA meeting reflects that neighboring property owners, including Frank and Tina Reed, Christopher and Brandi Shipwash, and Rita Walker, attended the meeting to speak in opposition to Mr. Mattison's request.  Mr. Mattison indicated during the hearing that he had sought the height variance in order to install garage doors that were tall enough to allow for the storage of boats or other items taller than a standard car.

The hearing transcript from the May 2022 BZA meeting reflects that a contentious debate ensued concerning more than the height variance request.  Neighboring property owners who opposed the variance also raised concerns about the lack of upkeep of Mr. Mattison's property, its potential use as a commercial repair facility, and the potential environmental ramifications of such use.  In response to these concerns, Mr. Mattison claimed that he was retired and did not operate any type of business on the property in question.  At the conclusion of the hearing, the BZA voted by a 3-2 majority to approve the height variance as requested by Mr. Mattison.

On May 11, 2022, the BZA sent a letter to Mr. Mattison approving his request for a variance subject to the following conditions:

1.      The proposed twenty-one foot height for the accessory building could not be exceeded.

2.  The location of the building had to be at the corner of Mr. Mattison's parcel "with 30 foot setback from the Shipwash property line and 20 foot setback from the Reed property line."

3.  "All of Mr. Mattison's vehicles and boats, current and future, dislocated by the construction of the garage, must be properly screened with review and approval required by the Town of Louisville Codes Official."

Following the BZA's approval of Mr. Mattison's request, on July 5, 2022, the Reeds filed a petition for writ of certiorari seeking the trial court's review of the BZA's variance approval pursuant to Tennessee Code Annotated §§ 27-8-101, *et seq*. The Reeds asked the trial court to declare the BZA's action illegal, arbitrary, and capricious because the variance was unsupported by material evidence in that "Mattison did not adequately demonstrate any necessary hardship justifying a variance." The Reeds also requested that the court issue a judgment finding the BZA's approval of the variance application to be illegal, void, and unenforceable.

The trial court conducted an initial hearing with respect to the petition on January 13, 2023, wherein the court raised specific questions and asked for additional briefing from the parties. The court requested that the parties address whether, when rendering its decision concerning the variance sought by Mr. Mattison, the BZA was limited to considering issues related to the shape, size, or topographic conditions of the real property based on the wording of the zoning ordinance. The court also requested that the parties brief whether the BZA could exercise broader jurisdiction or review than what the zoning ordinance expressly allowed, such as passing on special questions or appeals from a building official's decision.

On February 17, 2023, the trial court conducted a final hearing respecting the Reeds' petition. Following the arguments of counsel for the parties, the court took note of the authority vested in the BZA by the Town of Louisville's Zoning Ordinance, stating:

> Then when we turn to the specific ordinance in the Town of Louisville, we see that the Town of Louisville's Zoning Ordinance has vested the Board of Zoning Appeals with the following authority: "To conduct administrative review of any order or requirement, permit decision, determination or refusal made by an administrative or building official under the Zoning Ordinance . . ." which is consistent with [Tennessee Code Annotated § 13-7-]206 and 207 in the statutes. "To pass upon special exceptions to the Zoning Ordinance, including any special questions the Board is authorized to consider under the Zoning Ordinance." Again, it's

- 3 -

conceded this is not a special exception, but it may be a special question. "To decide variances from the terms of the Zoning Ordinance."

Accordingly, the trial court upheld the BZA's decision, concluding that the Town of Louisville had chosen to "give the Board of Zoning Appeals in Louisville broader authority than that contained on the face of Tennessee Code Annotated section 13-7-207.3, but within the scope of the broader authority authorized by Tennessee Code Annotated section 13-7-206 and 13-7-207.2[.]" Specifically, the court ruled:

> I am going to find that the Board of Zoning Appeals' authority is broader under the statutes, the interpreting caselaw and the ordinance, the empowering ordinance, than what is stated in Tennessee Code Annotated Section 13-7-207.3, that the Board was acting within its authority, that all of the deferential standards therefore apply, and that the Board of Zoning Appeals had a reasonable basis for its decision, and accordingly, I'm going to uphold the decision of the Louisville Board of Zoning Appeals.

On February 27, 2023, the trial court entered its final order affirming the BZA's decision to grant the variance to Mr. Mattison. The court found "that there was a rational basis supported by material evidence for the decision[.]" The court additionally stated that "the Board of Zoning Appeals acted within the scope of its authority and discretion granted by Tenn. Code Ann. § 13-7-206, Tenn. Code Ann. § 13-7-207, and the Town of Louisville Zoning Ordinance." The court therefore dismissed the petition for certiorari and affirmed the May 5, 2022 decision of the BZA. The Reeds timely appealed.

## II. Issues Presented

The Reeds present the following issues for this Court's review, which we have restated slightly:

1.  Whether this Court must review the administrative record *de novo* to determine whether material evidence exists supporting the BZA's grant of a height variance to Mr. Mattison.

2.  Whether judicial review of a variance is limited to review of the record for material evidence of unique property characteristics of the land at issue.

3.  Whether the record in this matter lacks material evidence of exceptional subject property characteristics or undue hardship to Mr. Mattison necessary to justify the height variance.

4. Whether the trial court erred in applying "special question" authority to uphold the BZA's grant of a height variance to Mr. Mattison.

Mr. Mattison restates the relevant issues as:

5. Whether Mr. Mattison was permitted to build an accessory structure twenty-one feet tall pursuant to the Town of Louisville Zoning Ordinance.

6. Whether the BZA had the authority to correct the erroneous interpretation of the codes enforcement officer.

7. Whether the trial court correctly determined that the BZA had a rational basis supported by material evidence for its decision.

### III. Standard of Review

As this Court has explained concerning the proper standard for review of a common law writ of certiorari:

> The vehicle for reviewing decisions of local boards of zoning appeals is through the common law writ of certiorari. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals of Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997) (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990)). Under the common law writ of certiorari, the reviewing court must examine whether the municipal agency acted illegally, arbitrarily, fraudulently, or in excess of its jurisdiction. *McCallen*, 786 S.W.2d at 638. In doing so, the court determines "whether there is any material evidence that supports the action of the administrative agency." *Laidlaw Envtl. Servs. of Nashville, Inc. v. Metro. Bd. of Health for Nashville & Davidson Cnty.*, 934 S.W.2d 40, 49 (Tenn. Ct. App. 1996) (citing *Lansden v. Tucker*, 204 Tenn. 388, 321 S.W.2d 795 (1959)). Courts must not "reweigh the evidence" or "scrutinize the intrinsic correctness of the decision," but independently review the record to "determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'" *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 [(Tenn. Ct. App. 2000)] (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). A challenge to the evidentiary foundation for a local zoning decision presents a question of law, which we review *de novo* with no presumption of correctness. *Id.*, 46 S.W.3d at 759. This Court's review of the evidence on appeal is no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

*Venture Holdings, LLC v. Metro. Gov't of Nashville & Davidson Cnty.*, 585 S.W.3d 409, 416-17 (Tenn. Ct. App. 2019) (quoting *Gulley v. Robertson Cnty. Planning & Zoning Comm'n*, No. M2015-00734-COA-R3-CV, 2016 WL 2898478, at *2 (Tenn. Ct. App. May 12, 2016)).

## IV. Necessity of Variance

As a threshold issue, Mr. Mattison posits that the grant of a variance was unnecessary in this matter because the subject zoning ordinance did not prohibit the proposed accessory structure. The Town of Louisville Zoning Ordinance ("the Ordinance") provides in pertinent part:

11-507. Accessory Building and Use Regulations.

Buildings and/or uses which are customarily incidental and subordinate in size and function to the principal use of a site are considered to be accessory buildings and/or uses and are permitted on the same lot with a principal use. The establishment of accessory buildings and/or uses shall be subject to the following provisions and other applicable provisions of this ordinance:

1. General Provisions.

   a. No accessory structure shall be occupied or used unless the principal structure to which it is accessory is occupied or being used.

   b. If an accessory building shares a structural wall with a principal building, it shall be deemed to be a part of the principal building and shall comply with the requirements of the ordinance applicable to a principal building, such as setback, height, etc.

2. Location.

   a. Residential districts. Except for general farming structures, accessory buildings not exceeding one (1) story or fourteen (14) feet in height, and occupying less than twenty (20) percent of the required rear yard, may be located as close as five (5) feet from the rear property line, except as may be provided for in Chapter 8. No accessory buildings or uses shall be permitted within any required front or side yard,

except for perimeter fencing and such items as mail boxes, yard ornaments, and light fixtures, located so as not to create a nuisance or safety hazard to neighboring property or the public.

\* \* \*

11-508.  Height and Density.

No building or structure shall hereafter be erected or altered so as to exceed the height limit, to accommodate or house a greater number of families, to have narrower or smaller front yards or side yards than are required or specified in the regulations herein for the district in which it is located.

Mr. Mattison asserts that the above provision, specifically Section 11-507(2)(a), "merely states that the height of the accessory building impacts the setback requirements."  In other words, his postulate is that the fourteen-foot height mentioned is not a maximum.  Accordingly, Mr. Mattison argues that not all accessory structures over fourteen feet in height require a variance; rather, only those structures located within a certain proximity to the rear property line would require a variance if greater than fourteen feet in height.  In support of his interpretation, Mr. Mattison relies on the permissive nature of the word, "may," and the fact that this provision appears under the heading, "Location."[1]

"Interpretation of statutes and ordinances is a question of law which we review de novo."  *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005).  With respect to interpreting ordinances, this Court has explained:

When the language of an ordinance is clear, the courts will enforce the ordinance as written.  When, however, the language of an ordinance is ambiguous, the courts will resort to the customary principles of statutory construction.  *See Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d [11,] 15 [(Tenn. Ct. App. 1992)].  Accordingly, the reviewing courts will construe a zoning ordinance as a whole and will give its words their natural and ordinary meaning.  *See Lions Head Homeowners' Ass'n v.*

---

[1] Mr. Mattison also argues that the BZA found the subject provision to be ambiguous such that we should resolve the issue in favor of allowing him the free use of his property.  *See Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992).  However, as this Court stated in *Northshore Corridor Assoc. v. Knox Cnty.*, 633 S.W.3d 561, 580 (Tenn. Ct. App. 2021):  "Although courts 'will refrain from substituting their judgments for that of the local government officials,' because interpretation of an ordinance is a question of law, courts must review the interpretation of ordinances de novo" (internal citations omitted).

*Metropolitan Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997); *Boles v. City of Chattanooga*, 892 S.W.2d 416, 420 (Tenn. Ct. App. 1994). They will also seek the interpretation that is most consistent with the ordinance's general purposes, but they will resolve ambiguities in favor of the property owner's right to the unrestricted use of his or her property. *See State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *State ex rel. Wright v City of Oak Hill*, 204 Tenn. 353, 356, 321 S.W.2d 557, 559 (1959).

*Venture Holdings*, 585 S.W.3d at 418 (quoting *421 Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000)). This Court has further elucidated:

[W]hen the language of an ordinance is clear, the courts should enforce the ordinance as written even if hardship results. If, however, the ordinance lacks precision, the courts should call upon their arsenal of interpretational rules, presumptions, and aids to arrive at the ordinance's meaning and intent.

Zoning ordinances should be free from vague terms and imprecise language because of the importance of the property interests involved. However, they need not be unerringly accurate. If a zoning ordinance does not define a term, the term should be given its natural and ordinary meaning, and the ordinance should be construed to carry out its general purpose.

*Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992) (internal citations omitted).

It is undisputed that Mr. Mattison's property is zoned "residential." The Ordinance provides that within a residential zone, "[c]ustomary accessory buildings" are permitted "subject to the requirements of Section 11-507." *See* Section 11-701(1)(j). The provision at issue, subsection 2(a) of Section 11-507, specifically states that "accessory buildings not exceeding one (1) story or fourteen (14) feet in height, and occupying less than twenty (20) percent of the required rear yard, may be located as close as five (5) feet from the rear property line." Section 11-507 also specifically provides that "[b]uildings and/or uses which are customarily incidental and <u>subordinate in size</u> and function to the principal use of a site are considered to be accessory buildings and/or uses and are permitted on the same lot with a principal use" (emphasis added).

Although subsection 2(a) is not a model of clarity, when we consider it within the framework of the Ordinance as a whole and give the words their natural and ordinary meanings, *see Venture*, 585 S.W.3d at 418, we conclude that the proper interpretation

would be to require that any accessory building in a residential zone be no more than fourteen feet in height pursuant to subsection 2(a). To interpret subsection 2(a) as Mr. Mattison urges, allowing an accessory building of <u>any</u> height so long as it is located farther than five feet from the rear property line, would run afoul of subsection 2(a)'s stated objective of "not [] creat[ing] a nuisance or safety hazard to neighboring property or the public." Moreover, an accessory building of substantial height would likely not be "subordinate in size" to the principal structure. *See* Section 11-507.

In further considering the language of Section 11-507, we also apply the statutory interpretation maxim of *expressio unius est exclusio alterius*, which holds that the "expression of one thing implies the exclusion of others." *See Northshore Corridor Assoc. v. Knox Cnty.*, 633 S.W.3d 561, 580 (Tenn. Ct. App. 2021) (quoting *Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011)). In doing so, we infer that the absence of any other specific height requirement concerning accessory buildings in a residential zone implies that the fourteen-foot height limit is the only height limit applicable to such buildings. *See Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011); *Northshore*, 633 S.W.3d at 580. We therefore conclude that the proper interpretation of Section 11-507(2)(a) is that any accessory building must be no more than fourteen feet tall, occupy less than twenty percent of the required rear yard, and be located five feet or more from the rear property line. Inasmuch as Mr. Mattison's proposed accessory building exceeded this height requirement, a variance or some other relief from the terms of the Ordinance was necessary.

We further note that Mr. Mattison took the position before the BZA and the trial court that a variance was required because of the Ordinance's height requirement. Mr. Mattison's initial letter to the BZA stated: "I am requesting a variance on the height of a proposed accessory building . . . ." Based on the record before us, we see no indication that Mr. Mattison has previously adopted the position that the Ordinance did not actually impose a fourteen-foot height limitation. Accordingly, he cannot maintain an inconsistent position on appeal. *See Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982) (holding that a party "cannot take a position on appeal inconsistent with that taken in the trial of the case"); *Price v. Tenn. Prod. & Chem. Corp.*, 385 S.W.2d 301, 307 (Tenn. Ct. App. 1964) ("When a cause is brought up for appellate review, a party cannot assume an attitude inconsistent with, or different from, that taken by him at the trial."); *Bradley Cnty. v. City of Cleveland*, No. E2012-00634-COA-R3-CV, 2012 WL 5333555, at *8 (Tenn. Ct. App. Oct. 30, 2012) ("A party is not allowed to take one position in the trial court and then take a contrary position on appeal."). We therefore find Mr. Mattison's argument that he was not required to seek a variance to be unavailing.

## V. Propriety of Grant of Variance

We now turn to the issues raised by the appellants. The Reeds' overarching argument is that judicial review of a variance is limited to review of the record for material evidence concerning unique property characteristics of the land at issue. Upon thorough review, we agree.

As this Court has previously explained:

> The board of zoning appeals' authority extends only so far as state law permits. *Father Ryan High School v. City of Oak Hill*, 774 S.W.2d 184, 190 (Tenn. Ct. App. 1988). It cannot be extended by the city commission or by implication. State law permits, but does not require, city commissions to empower boards of zoning appeals to perform six functions: (1) making special exceptions [Tenn. Code Ann. §§ 13-7-206(a), -207(2)]; (2) interpreting zoning maps [Tenn. Code Ann. §§ 13-7-206(a), -207(2)]; (3) passing upon boundary line disputes [Tenn. Code Ann. § 13-7-206(a)]; (4) authorizing variances [Tenn. Code Ann. § 13-7-207(3)]; (5) deciding other special questions as authorized in the zoning ordinance [Tenn. Code Ann. § 13-7-207(2)]; and (6) deciding appeals from decisions of a municipal building commissioner or "other administrative official" [Tenn. Code Ann. §§ 13-7-206(b), -207(1)].

*Whittemore*, 835 S.W.2d at 14.

The statutory section that provides authority for a board of appeals to grant variances, Tennessee Code Annotated § 13-7-207(3) (2019), states that a board can authorize a variance based on the following circumstances:

> Where, <u>by reason of exceptional narrowness, shallowness or shape of a specific piece of property</u> at the time of the enactment of the zoning regulation, or <u>by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property</u>, the strict application of any regulation enacted under this part and part 3 of this chapter would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property, [a board can] authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided, that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance.

- 10 -

(Emphasis added.)

> With regard to the Ordinance, Section 11-207 provides:

> > The Board of Zoning Appeals shall have all of the following powers, as granted by Section 13-7-207 of the Tennessee Code Annotated:

> > * * *

> > 3.    Variance.  To hear and decide applications for variances from the terms of this ordinance, where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property as a lot of record at the time of adoption of this ordinance a specific hardship exists in meeting the requirements of this ordinance, or where by reason of exceptional topographical conditions or other extraordinary or exceptional situations or conditions of a piece of property, the strict application of the provisions of this ordinance would result in exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, provided that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of this ordinance.  In granting a variance, the BZA may attach thereto such conditions regarding the location, character, and other features of the proposed building, structure or use as it may deem advisable in furtherance of the purpose of this ordinance. Before any variance is granted it shall be shown that special circumstances are attached to the property which do not generally apply to other property in the neighborhood.

(Emphasis added.)   In addition, the definitions section of the Ordinance defines a "variance" as:

> A modification of the provisions of this ordinance when such modification will not be contrary to the public interest where, owing to conditions peculiar to the property and not the result of the actions of the applicant occurring after the effective date of the ordinance, a literal enforcement of the ordinance would result in unnecessary and undue hardship.

*See* Section 11-1003 (emphasis added).

For many years, this Court has interpreted the above-referenced statutory language and the wording of similar ordinances as requiring a showing of "peculiar circumstances of the land . . . rather than any hardship personal to or created by an owner" before a

- 11 -

variance may be lawfully granted by a board of appeals. *See McClurkan v. Bd. of Zoning Appeals for Metro. Gov't of Nashville & Davidson Cnty.*, 565 S.W.2d 495, 497 (Tenn. Ct. App. 1977) ("[B]oth the statute and ordinance controlling here make characteristics of the land itself the overriding criteria by which the Board is to decide the issue of hardship to an owner."). *See also Hillsboro-W. End Neighborhood Ass'n, Inc. v. Metro. Bd. of Zoning Appeals, Nashville Davidson Cnty.*, No. 01A01-9406-CH-00282, 1995 WL 79224, at *3 (Tenn. Ct. App. Feb. 24, 1995) (explaining that a variance must be predicated upon a finding that the "unique features of the lot itself . . . result in hardship to the [owner]."); *Baker v. Bd. of Zoning Appeals of Metro. Gov't of Nashville & Davidson Cnty.*, No. C.A. 88-147-II, 1989 WL 3167, at *5 (Tenn. Ct. App. Jan. 20, 1989) ("Reading the statute and the local zoning regulations together, it is essential that there be proof and a finding that a particular hardship or exceptional practical difficulty is imposed upon the owner by the size, shape or topographical conditions of the property before a variance can be granted."); *Metro. Historical Comm'n v. Colony Assocs. Joint Venture*, No. 87-319-II, 1988 WL 109234, at *9 (Tenn. Ct. App. Oct. 19, 1988) ("[S]tate statute and local ordinance [concerning the grant of a variance], read together, require proof and finding that a particular hardship (as distinguished from a mere inconvenience or diminution of financial return) is imposed upon the owner by (1) size (2) shape or (3) topographical conditions of the property.").

For example, in *Hillsboro*, a church had purchased a nearby lot for the purpose of converting "the existing residence to church classrooms and build[ing] 29 accessory parking spaces." *See* 1995 WL 79224, at *1. However, the nearby lot was zoned residential, and when the church's application for a building permit was denied, the church sought a variance from the Metropolitan Board of Zoning Appeals ("the Board"). *Id*. The Board granted the variance, and the Davidson County Chancery Court affirmed upon certiorari review. *Id*.

On appeal, the *Hillsboro* Court examined Tennessee Code Annotated § 13-7-207(3), as well as the local zoning regulations, both of which required a showing of unique shape, size, topography, or other physical characteristics of the land in order to grant a variance. *Id*. at *2. Upon review of the record, the *Hillsboro* Court determined that no such evidence existed, stating: "Nowhere in the Board's findings of fact is there a showing that the unique features of the lot itself in any way result in hardship to the defendant." *Id*. at *3. This Court further found:

> The Church's need for parking for its worship facilities and its substantial financial expenditure to purchase the subject lot are personal to the defendant and are not relevant to the issue of the granting of a variance. Because there are no facts establishing a hardship to the defendant created by the peculiar characteristics of the land, we find that there is no material evidence to support the Board's granting of a variance. Accordingly, the

Board's action in granting the variance from section 24.52 of the Zoning
Regulations was illegal and outside the scope of its jurisdiction.

*Id*. at *3.

Similarly, here, both Tennessee Code Annotated § 13-7-207(3) and Section 11-207(3) of the Ordinance require a showing of some peculiar physical characteristic of the subject land in order to grant a variance. Mr. Mattison has conceded that no such characteristics are present on the subject real property. As such, the record lacks material evidence to support the BZA's grant of the variance here. Rather, the record demonstrates that Mr. Mattison sought a variance so that he could build a taller accessory building with higher garage doors that could accommodate a boat or other motor vehicles. In addition, the BZA made no finding of any particular characteristic of the real property that created a hardship for Mr. Mattison. Instead, any hardship in this matter is clearly "personal to or created by an owner" and is insufficient to justify the grant of a variance. *See McClurkan*, 565 S.W.2d at 497. Ergo, the BZA acted illegally and outside of its authority in granting the variance. We therefore reverse the trial court's judgment affirming the BZA's decision and vacate the BZA's grant of the variance.

## VI. Other Avenues of Relief from Height Limitation in the Ordinance

The appellees contend that the trial court properly determined that other statutory provisions granted the BZA authority to grant relief to Mr. Mattison in this instance. In addition to the power afforded to boards of appeal regarding the grant of a variance, Tennessee Code Annotated § 13-7-207 also provides that a board of appeals can:

Hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, or refusal made by the municipal building commissioner or any other administrative official in the carrying out or enforcement of any provision of any ordinance enacted pursuant to this part and part 3 of this chapter;

Hear and decide, in accordance with any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass[.]

Tenn. Code Ann. § 13-7-207(1)-(2). Similarly, the Ordinance provides that the BZA can "hear and decide appeals where it is alleged by the appellant that there is error in any order, or requirement, permit decision, determination or refusal made by the Administrator, building official or other administrative official in the carrying out or enforcement of any provision of this ordinance." *See* Section 11-207(1). The Ordinance also provides that the BZA may "make decisions upon any special questions which the

[BZA] is authorized to consider under this ordinance, and interpret the zoning map." *See* Section 11-207(2).

Appellees urge that both of these provisions are potentially applicable here because (1) Mr. Mattison was denied a permit to build an accessory building by an administrative official, who was relying on the height limitation in Section 11-507(2)(a), and (2) his request for relief from the height limitation in Section 11-507(2)(a) could qualify as a special question upon which the BZA was authorized to act. The trial court agreed, finding that the BZA had the power to act upon Mr. Mattison's request for relief because the BZA was authorized to "conduct administrative review of any order or requirement, permit decision, determination or refusal made by an administrative or building official under the zoning ordinance" and because Mr. Mattison's request "may be a special question." *See* Tenn. Code Ann. § 13-7-206(b) (2019) (allowing the BZA to hear an appeal from the denial of a building permit); § 13-7-207(1), (2) (detailed above).

Although the BZA certainly maintains power and authority to act in the circumstances described in Tennessee Code Annotated § 13-7-207(1)-(2) and Section 11-207(1)-(2) of the Ordinance, those circumstances were not present before the BZA in the case at bar. Here, in his letter to the BZA, Mr. Mattison specifically requested the grant of a variance from the height restriction on accessory buildings in a residential zone imposed by Section 11-507(2)(a). Mr. Mattison did not expressly seek review of an administrative official's decision or the resolution of a special question. Moreover, the meeting report and transcript from the BZA's May 5, 2022 meeting reflect that all discussions and consideration of Mr. Mattison's request concerned the grant of a variance from the Ordinance's height requirement. As this Court has explained, local government "boards and commissions . . . speak or act officially only through their minutes and records made at duly called meetings." *See B & B Enters. of Wilson Co., LLC v. City of Lebanon*, No. M2003-00267-COA-R3-CV, 2004 WL 2916141, at \*3 (Tenn. Ct. App. Dec. 16, 2004). Finally, the May 11, 2022 letter sent by the BZA to Mr. Mattison explicitly approved his request for a variance subject to certain conditions.

Having determined that the grant of a variance in this situation was illegal and outside the scope of the BZA's authority, *see Hillsboro*, 1995 WL 79224, at \*3, we likewise determine that the trial court erred in affirming the BZA's grant of the variance when there existed no material evidence of any particular characteristic of the real property warranting the grant of a variance. *See Venture Holdings*, 585 S.W.3d at 416-17. We further conclude that the trial court erred by looking beyond the Ordinance's variance procedure in order to affirm the BZA's action in this matter. We therefore reverse the trial court's decision affirming the BZA's grant of a variance, and we vacate the BZA's grant of a variance to Mr. Mattison.

## VII.  Conclusion

For the foregoing reasons, we reverse the trial court's decision affirming the BZA's grant of a variance, and we vacate the BZA's grant of a variance to Mr. Mattison as unsupported by material evidence of any particular characteristic of the subject property warranting the grant of a variance.  We remand this matter to the trial court for such further proceedings, if any, as may be necessary and proper and collection of costs assessed below.  Costs on appeal are assessed to the appellee, William Mattison.


s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE